GOOD HOPE MISSIONARY BAPTIST CHURCH, Respondent/Cross–Appellant,

v.

ST. LOUIS ALARM MONITORING COMPANY, INC., Appellant/Cross–Respondent.

No. ED 96409.

Missouri Court of Appeals, Eastern District, Division Five.

Jan. 24, 2012.

---

Ted L. Perryman, Thomas G. Wilmowski, Jr., Saint Louis, MO, For Respondent/Cross–Appellant.

Robert W. Cockerham, Samuel J. Vincent, III, Saint Louis, MO, For Appellant/Cross–Respondent.

## OPINION

GLENN A. NORTON, J.

St. Louis Alarm Monitoring Company, Inc. ("SLAM") appeals the trial court's judgment awarding Good Hope Missionary Baptist Church ("Good Hope") $338,301.37 in pre-judgment interest after a jury awarded Good Hope $1 million in compensatory and punitive damages on Good Hope's claims against SLAM for negligence and recklessness. Good Hope cross-appeals the trial court's denial of its motion to amend the trial court's judgment to include additional pre-judgment interest and post-judgment interest. We affirm the judgment as modified.

## I. BACKGROUND

Beginning in 1993, Good Hope hired SLAM to monitor a fire alarm system for Good Hope's church. In December 2000, Good Hope's church was destroyed by a fire. On January 28, 2005, Good Hope sent SLAM a demand letter demanding $500,000.00 from SLAM in payment for damages Good Hope sustained from the fire. In the demand letter, Good Hope alleged that the damages were the result of SLAM's negligent monitoring services of the church's fire alarm system. Both parties agree that Good Hope's January 2005 demand letter was in full compliance with section 408.040 RSMo 2000 which governs pre-judgment interest in tort cases.

After Good Hope sent SLAM its demand letter, the Missouri General Assembly passed House Bill 393 to go into effect on August 28, 2005, providing sweeping tort reform changes in Missouri, including changes to the requirements relating to pre-judgment interest under section 408.040 RSMo 2000. Good Hope subsequently filed suit against SLAM on December 20, 2005, alleging negligence and recklessness.

A week-long jury trial took place in November 2008. Before the verdict was announced, the parties indicated that they entered into a high-low settlement agreement to be based on the jury's verdict.

The jury then returned a verdict awarding Good Hope $715,143.00 in compensatory damages and $284,857.00 in punitive damages for a total of $1 million in damages. Subsequently, both parties filed a motion to enforce settlement, with the parties disputing as to whether the settlement agreement included pre-judgment interest. On December 22, 2008, the trial court granted SLAM's motion to enforce settlement and entered judgment on the pleadings in favor of SLAM, finding that the parties entered into a binding and enforceable settlement agreement in the amount of $1 million which did not include pre-judgment interest. On December 30, 2008, SLAM made a payment to Good Hope in the amount of $1 million.

Good Hope appealed the trial court's judgment. This Court found that the trial court improperly entered judgment on the pleadings and reversed and remanded the case for an evidentiary hearing on whether the parties had reached an enforceable settlement agreement. *Good Hope Missionary Baptist Church v. St. Louis Alarm Monitoring Company, Inc.*, 306 S.W.3d 185, 193 (Mo.App. E.D.2010). On remand, the trial court conducted an evidentiary hearing on the settlement agreement. On January 26, 2011, the trial court entered a judgment finding there to be no settlement agreement, denying both parties' motions to enforce settlement, and entering judgment on the jury's verdict awarding Good Hope $1 million in damages. The trial court also awarded Good Hope pre-judgment interest in the amount of $360,000.00.

Subsequently, both parties filed motions to amend the trial court's judgment. Good Hope alleged the correct amount of pre-judgment interest was $525,205.48, repre-

senting interest on the judgment calculated from March 29, 2005,[1] until the final judgment was rendered on January 26, 2011. SLAM alleged that the proper amount of pre-judgment interest, if any, was $338,301.37, representing interest on the judgment calculated from March 29, 2005, until SLAM tendered payment to Good Hope on December 30, 2008. On February 25, 2011, the trial court denied Good Hope's motion, granted SLAM's motion, and amended the judgment, applying the version of section 408.040 in effect when Good Hope sent its demand letter to award Good Hope pre-judgment interest in the amount of $338,301.37. SLAM appeals and Good Hope cross-appeals.

## II. DISCUSSION

### A. Trial Court's Application of Pre-Amended Section 408.040

■ SLAM's sole point on appeal raises the issue of whether the 2005 amendments to section 408.040, relating to the recovery of pre-judgment interest, can be applied retroactively without violating Article I, section 13 of the Missouri Constitution which provides that no law "retrospective in its operation ... can be enacted." "Determination of the right to pre-judgment interest is reviewed de novo because it is primarily a question of statutory interpretation and its application to undisputed facts." *Children Intern. v. Ammon Painting Co.*, 215 S.W.3d 194, 202 (Mo.App. W.D.2006).

The version of section 408.040 in effect at the time Good Hope sent its demand letter on January 28, 2005, stated that pre-judgment interest at the rate of 9% per annum "shall be calculated from a date sixty days after the demand or offer was

1. Under section 408.040 RSMo 2000, pre-judgment interest begins accruing sixty days after the demand letter was made. In this case it is undisputed that the applicable date was March 29, 2005.

made...." Section 408.040.2 RSMo 2000. Furthermore, it stated that, "[a]ny such demand or offer shall be made in writing and sent by certified mail and shall be left open for sixty days." *Id.* As previously stated, in 2005, the General Assembly passed House Bill 393, providing sweeping tort reform in Missouri, including changes to the requirements relating to pre-judgment interest under section 408.040 RSMo 2000. As amended, the law allows plaintiffs to be awarded pre-judgment interest calculated from ninety days after the demand was received, at a "per annum interest rate equal to the intended Federal Funds Rate ... plus three percent." Section 408.040.3 RSMo Supp.2005. Unless otherwise agreed, interest is only allowed if suit is filed within 120 days after the demand letter was received. *Id.* at 408.040.2(4). Additionally, the amendments added a requirement that the demand letter:

[b]e accompanied by an affidavit of the claimant describing the nature of the claim, the nature of any injuries claimed and a general computation of any category of damages sought by the claimant with supporting documentation, if any is reasonably available.

*Id.* at 408.040.2(2). Under both versions of the statute, interest is only proper if the demand is exceeded by a judgment. *Id.* at 408.040.2; section 408.040.2 RSMo 2000.

The parties do not dispute that Good Hope's January 28, 2005 demand letter complied with the requirements under pre-amended section 408.040. Instead, SLAM argues that the amended version of section 408.040 should apply to this case and bar Good Hope from recovering any pre-judgment interest because its demand letter did not comply with the new requirements, specifically the requirements that the suit be filed within 120 days of the demand letter and that the letter be accompanied

by an affidavit. SLAM's claim is based on section 538.305 RSMo Supp.2005, which states that the provisions of House Bill 393 "shall apply to all causes of action filed after August 28, 2005." Because Good Hope filed this action in December 2005, SLAM argues that the plain and unambiguous language of section 538.305 RSMo Supp.2005 requires a finding that the amended version of section 408.040 apply to this case. In response to SLAM's arguments, Good Hope contends, and we agree, that applying the amended version of section 408.040 would violate the ban on retrospective laws found in Article I, section 13 of the Missouri Constitution.

The Missouri Supreme Court has defined a "retrospective law" as one that "takes away or impairs vested or substantial rights acquired under existing laws or imposes new obligations, duties, or disabilities with respect to past transactions." *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 769 (Mo. banc 2007). A law is retrospective if it has the same effect as to past transactions as to future ones. *Missouri Real Estate Com'n v. Rayford*, 307 S.W.3d 686, 690 (Mo.App. W.D.2010). The prohibition against retrospective laws "does not mean that no statute relating to past transactions can be constitutionally passed, but rather, that none can be allowed to operate retrospectively so as to affect such past transactions to the substantial prejudice of parties interested." *Id.* (internal quotation omitted). Procedural laws that provide the method for enforcing rights rather than affecting the rights or duties giving rise to the cause of action may be applied retrospectively without violating the constitution. *White v. Tariq*, 299 S.W.3d 1, 4 (Mo.App. E.D.2009) (citing *Hess*, 220 S.W.3d at 769).

SLAM urges this Court to follow the holding of *Tariq* and find that the

changes to section 408.040 are procedural changes that can be applied retrospectively. In *Tariq,* our Court held that House Bill 393's amendment to section 538.225 RSMo Supp.2005, mandating the dismissal of malpractice suits for a failure to file a health care affidavit, was merely a procedural change that could be applied to a cause of action accruing prior to the law's enactment. *Id.* at 4. We found that the change in the law did not affect the rights or duties giving rise to the plaintiffs' action. *Id.* Instead, our Court found the law merely set forth the procedures to follow to recover on the underlying claim and therefore did not violate the ban on retrospective laws. *Id.*

The amendment in question in *Tariq* allows plaintiffs to file the health care affidavit within 90 days (or 180 days if good cause is shown) of the filing of the petition. Section 538.225.5 RSMo Supp.2005. Accordingly, the *Tariq* plaintiffs' substantive right to recover on the underlying suit went unchanged as long as they complied with the new procedure. Here, the 2005 amendments to section 408.040, if applied in this case, would change Good Hope's substantive right to recover pre-judgment interest beginning March 29, 2005, at the pre-amended statutory rate. In contrast to the plaintiffs in *Tariq,* it was impossible for Good Hope to comply with the new statutory requirements and still recover on its underlying claim. If Good Hope was forced to send a new demand letter in compliance with the new statutory requirements, it would have only been entitled to recover interest beginning ninety days after that letter was sent, at the amended statutory rate as provided under section 408.040 RSMo Supp.2005. This would have resulted in Good Hope forfeiting interest accrued beginning March 29, 2005, sixty days after the original demand letter was sent, as provided under the pre-amended version of section 408.040.

This case is more analogous to *Smart v. Missouri State Treasurer,* 916 S.W.2d 367 (Mo.App. S.D.1996). In *Smart,* an amendment to section 287.220 changed the threshold requirements to recover on a workers' compensation claim from the Second Injury Fund, requiring the claimant to have suffered a minimum of 15% permanent partial disability. *Id.* at 368. Appellant claimed that the new requirement could not be applied retroactively to his claim because the change in the law took away his "right to recover under existing law at the time his claim arose. . . ." *Id.* at 369. The Court agreed stating that, "under the statute in effect at the time [appellant] was injured, he had the right to recover. . . . The 1993 amendment took away that right of recovery, a right [appellant] acquired under laws existing at the time he sustained the current injury." *Id.* Accordingly, the Court held that the change in the law was substantive and would constitute a retrospective law if applied retroactively to cases arising before the effective date of the law. *Id.* at 369–70.

Similar to the claimant in *Smart,* before the amended changes to section 408.040 went into effect, Good Hope's right to recover pre-judgment interest beginning March 29, 2005, had already accrued. "The transmittal of a certified letter offering to settle a tort claim before the filing of a lawsuit for the alleged tortious conduct referenced in the letter is sufficient to activate the provisions of section 408.040.2, provided that the necessary requirements of the statute are satisfied." *Smith v. Shaw,* 159 S.W.3d 830, 834–35 (Mo. banc 2005). Accordingly, when Good Hope issued a demand letter in compliance with the pre-amended version of section 408.040, it became entitled to pre-judgment interest if the demand was later exceeded by the judgment, as it was here.

Under the pre-amended version of section 408.040.2, that interest began to accrue on March 29, 2005, sixty days after Good Hope issued its demand letter. Applying the amended version of section 408.040 retroactively would take away Good Hope's substantive right to recover interest beginning March 29, 2005, at the rate of 9% per annum.

Because application of 408.040 RSMo Supp.2005 would take away a substantive right acquired by Good Hope under the law existing at the time it sent the demand letter, the portions of section 408.040 RSMo Supp.2005 relating to pre-judgment interest cannot be applied retroactively without violating the constitutional ban on laws retrospective in operation. Accordingly, the trial court did not err in applying section 408.040 RSMo 2000 to Good Hope's claim for pre-judgment interest. Point one on appeal is denied.

### B. Good Hope's Cross–Appeal

Good Hope alleges two points in its cross-appeal, which both claim the trial court erred in denying its motion to amend the trial court's judgment. Both issues raised by Good Hope involve the interpretation and application of a statute, which are questions of law that we review de novo. *McKinney v. State Farm Mut. Ins.*, 123 S.W.3d 242, 245 (Mo.App. W.D.2003).

### 1. Additional Pre–Judgment Interest

In its first point on cross-appeal, Good Hope claims that the trial court erred in denying its motion to amend the trial court's judgment because SLAM's December 30, 2008 tender of $1 million had no effect on section 408.040 RSMo 2000's requirement that pre-judgment interest be awarded up to the date the trial court entered judgment on January 26, 2011. Accordingly, Good Hope claims the trial court erred in ruling that no pre-

judgment interest accrued after SLAM's payment on December 30, 2008.

The theory for awarding interest is to compensate one party for the use or loss of use of money to which that party is entitled. *Lindquist v. Mid–America Orthopaedic Surgery, Inc.*, 325 S.W.3d 461, 465 (Mo.App. E.D.2010). "It is almost an axiom of American jurisprudence that he who has the use of another's money, or money he ought to pay, should pay interest on it." *Id.* (internal quotation omitted). However, "once a sum is paid, it is the payee, not the payor, that has use of that sum paid." *Id.* Accordingly, when a party makes a payment, they no longer have the control of that money and the accrual of interest on that money is no longer congruous. *Id.*

SLAM made a payment of $1 million on December 30, 2008, in partial satisfaction of the January 26, 2011 judgment. Interest accrues only on unpaid monies and will not continue to accrue on amounts already paid. *Burns v. Smith*, 303 S.W.3d 505, 515 (Mo. banc 2010); *Lindquist*, 325 S.W.3d at 465; *see Boggs ex rel. Boggs v. Lay*, 164 S.W.3d 4, 25 (Mo.App. E.D.2005) ("Although pre-judgment interest is normally calculated on the entire amount of the judgment, public policy suggests credit should be given for payments made to plaintiffs prior to trial, so that plaintiffs do not, in effect, collect interest twice...."). Accordingly, the trial court did not err in denying Good Hope's motion to amend the trial court's judgment because pre-judgment interest could not accrue after the payment was made by SLAM on December 30, 2008. Point one on cross-appeal is denied.

### 2. Post–Judgment Interest

In its second and final point on cross-appeal, Good Hope claims the trial court erred in denying its motion to amend

the trial court's judgment because the court failed to award post-judgment interest. Section 408.040.2 RSMo Supp.2005 states that, "[i]nterest *shall* be allowed *on all money due* upon any judgment or order of any court from the date of judgment is entered by the trial court until full satisfaction." (emphasis added). Here, SLAM has partially satisfied the judgment with its payment of $1 million to Good Hope on December 30, 2008, leaving only pre-judgment interest in the amount of $338,301.37 due on the judgment. It is proper for interest to accrue on a judgment even though it includes an amount of pre-judgment interest. *Boatmen's First Nat. Bank of Kansas City v. Bogina Petroleum Engineers,* 794 S.W.2d 703, 706 (Mo.App. W.D.1990). Accordingly, any post-judgment interest that Good Hope could become entitled to recover after the mandate of this appeal[2] can only accrue on the $338,301.37 that is still due on the judgment.

Section 408.040.2 RSMo Supp.2005 states that in tort actions, judgments "shall bear a per annum interest rate equal to the intended Federal Funds Rate, as established by the Federal Reserve Board, plus five percent, until full satisfaction is made." Furthermore, the "judgment *shall* state the applicable interest rate, which shall not vary once entered." *Id.* (emphasis added). Based on this language, the trial court's judgment should have included the applicable interest rate for any post-

judgment interest Good Hope may become entitled to recover. The intended Federal Funds Rate was .25 percent on January 26, 2011,[3] the date of the trial court's judgment. Therefore, the judgment should have included the post-judgment interest rate of 5.25% per annum. Accordingly, pursuant to Missouri Supreme Court Rule 84.14 (2011), we modify the trial court's judgment to include the post-judgment interest rate of 5.25% to reflect post-judgment interest that may accrue after the mandate of this appeal. *See Gaydos v. Imhoff,* 245 S.W.3d 303, 308 (Mo.App. W.D.2008) (applying Rule 84.14 to an award of post-judgment interest). Point two on cross-appeal is granted.

## III. CONCLUSION

We modify the trial court's judgment to include the post-judgment interest rate of 5.25%. The judgment is affirmed as modified.

KURT S. ODENWALD, C.J. and MICHAEL D. BURTON, SP. J., concur.

---

**2.** Interest will only begin to accrue after this appeal is mandated. Good Hope is not entitled to post-judgment interest pending this appeal because it unsuccessfully challenged the adequacy of the trial court's judgment in point one of its cross-appeal. *See Investors Title Co. v. Chicago Title Ins. Co.,* 18 S.W.3d 70, 72 (Mo.App. E.D.2000) (internal quotation omitted) (finding that when a judgment creditor appeals or cross-appeals "upon the ground of what he conceives to be the inadequacy of the judgment which was rendered in

his favor, then if the judgment is affirmed he is held not to be entitled to interest on the judgment pending the disposition of the appeal ...").

**3.** *See* Intended Federal Funds Rate, http://www.federalreserve.gov/monetarypolicy/openmarket.htm (last visited Jan. 20, 2012); Fed Funds Rate, http://www.bankrate.com/rates/interest-rates/federal-funds-rate.aspx (last visited Jan. 20, 2012).