

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| HARLAND HAWLEY, ET AL., | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| v. | ) | WD76358 |
| | ) | |
| EDWARD D. TSEONA, | ) | Opinion filed: November 25, 2014 |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
### The Honorable Michael W. Manners, Judge

### Before Division Three: Gary D. Witt, Presiding, Judge,
### Joseph M. Ellis, Judge and Anthony Rex Gabbert, Judge

Edward Tseona appeals from a judgment entered against him in the Circuit Court of Jackson County in a wrongful death action brought by the family of Greg Hawley ("Decedent"). Specifically, Appellant challenges the trial court's award of prejudgment interest and the amount of compensatory damages awarded to Respondents. For the following reasons, the trial court's decision to award prejudgment interest is reversed; in all other respects, the judgment is affirmed.

On the evening of January 10, 2009, Appellant was recklessly driving a vehicle on I-70 in Kansas City, Missouri, racing another vehicle at speeds in excess of 90 miles per hour, when he struck Decedent's truck, knocking it off the highway and causing a

rollover accident. Decedent suffered massive injuries.[1] He was taken by ambulance to Truman Medical Center, where he died approximately four hours later. Appellant eventually pleaded guilty to vehicular manslaughter and reckless driving and was sentenced to three years imprisonment.[2]

Respondents were all family members of Decedent. Karen Hawley was his wife; Harland and Florence Hawley were his parents; and Derek Hawley, Megan Weist, and Kristin Smith were his children.

On January 25, 2010, Respondents Karen Hawley, Derek Hawley, Megan Weist, and Kristin Smith sent to Appellant's attorney a "Prejudgment Interest Affidavit" signed by all of them, along with some supporting documents.[3] Within that affidavit, they offered to settle their wrongful death claims against Appellant for $1,000,000.00. A separate affidavit with the same supporting documents was sent by Harland and Florence Hawley. They similarly offered to settle their wrongful death claims against Appellant for $1,000,000.00. That same day, Respondents collectively filed a wrongful death action against Appellant in the Circuit Court of Jackson County. The settlement offers were not accepted by Appellant.

By agreement of the parties, the case was tried to the court in a four-day trial beginning on July 30, 2012. Liability for actual damages was conceded, and the issues presented were (1) whether aggravated circumstances damages should be awarded and (2) the amount of damages to be awarded.

---

[1] Decedent sustained blunt force trauma to the head and neck; blunt force injuries to the chest and abdomen; fractures of several vertebrae, the right clavicle, mid-sternum, and multiple ribs; an open compound fracture of the left humerus; and multiple lacerations and abrasions.
[2] Appellant served 120 days of shock incarceration and was placed on probation for the remainder of his sentence.
[3] The attached documents were a copy of the police report, a copy of the information against Appellant, a copy of decedent's death certificate, a copy of the bill for funeral and burial costs, and a bill for the ambulance service.

Following trial, Respondents filed a motion with the court requesting that pre-judgment interest be awarded pursuant to § 408.040.2. Appellant opposed that motion, contending that Respondents had failed to comply with the requirements of the statute and were, therefore, not entitled to prejudgment interest.

Subsequently, on December 18, 2012, the trial court entered its judgment finding Respondents had sustained $14,000,000.00 in actual damages[4] and that $100,000.00 should be awarded due to aggravated circumstances.[5] The overall award was reduced by $1,000,000.00 based upon money already paid in a settlement with Appellant's employer. The court found that Respondents made a proper demand for prejudgment interest under § 408.040 and were entitled to prejudgment interest on both the actual damages award and aggravating circumstances award. The court calculated the prejudgment interest owed to be $946,465.20. The court further ordered post-judgment interest to be paid at a rate of 5.13% per annum. Appellant brings two points on appeal.

In his first point, Appellant claims that the trial court erred in awarding Respondents prejudgment interest. As a threshold matter, we must address Respondents' contention that Appellant waived any challenge to the trial court's award of pre-judgment interest by voluntarily making a payment of a portion of the overall award to Respondents following the entry of the judgment but before Appellant's Motion to Amend, Correct, Modify and Re-Open Judgment had been ruled upon. Respondents contend that a portion of that partial payment should be viewed as applying to the award of prejudgment interest and argue that such a partial payment of some of the

---

[4] The court found the actual damages sustained by Respondents to be as follows: Karen Hawley ($5,000,000.00), Derek Hawley ($2,000,000.00), Kristin Smith ($2,000,000.00), Megan Weist ($2,000,000.00), Harland Hawley ($1,500,000.00), and Florence Hawley ($1,500,000.00).
[5] The court apportioned that amount among the parties.

3

prejudgment interest constitutes an act impliedly recognizing the validity of the prejudgment interest award. Respondents claim that Appellant should, therefore, be considered to have waived his claim on appeal or to be otherwise procedurally estopped from challenging the prejudgment interest award on appeal.

Certainly, cases have held that "a party may procedurally estop himself from taking an appeal by performing acts after the rendition of the order or judgment which are clearly inconsistent with the right of appeal, and the estoppel may consist of any voluntary act which expressly or impliedly recognizes the validity of the judgment." **State ex rel. Royce-St. Louis Ltd. Partnership v. Kraiberg**, 864 S.W.2d 409, 410 (Mo. App. E.D. 1993). "When an event occurs which makes a decision on appeal unnecessary or which makes it impossible for the appellate court to grant effectual relief, the appeal is moot, and we will not exercise jurisdiction over a moot cause." *Id*. at 411.

The cases relied upon by Respondent are inapposite, however, as they all involved challenges on appeal to a court ordered transfer of specific property (a deed, stock shares, and a liquor license) and the appellant had fully transferred that property before the appeal was heard. *See Id*. at 410-11; **Schulte v. Schulte**, 949 S.W.2d 225, 226 (Mo. App. E.D. 1997); **Southern Mo. Dist. Council of the Assemblies of God, Inc. v. Kirk**, 334 S.W.3d 599, 601 (Mo. App. S.D. 2011).

In this case, Respondents have presented no evidence that any of the partial payment made by Appellant was intended as payment of prejudgment interest, and Appellant has denied such, both at the trial court level and on appeal. Appellant has maintained that the payment that was made was to cut off the accrual of post-judgment

4

interest on the amount of the total judgment that was paid. Such payments to avoid post-judgment interest are considered involuntary and do not render an appeal moot. *Two Pershing Square, L.P. v. Boley*, 981 S.W.2d 635, 639 (Mo. App. W.D. 1998). Furthermore, Respondents have not indicated, and the record does not reflect, how much of the total judgment was paid by Appellant. On appeal, Appellant concedes that the evidence supports an award of actual damages of at least $3,921,735.00. To the extent that Appellant's voluntary payment did not exceed that amount, it certainly could not be deemed to be contrary to any of Appellant's positions on appeal or to interfere in any way with this Court's ability to grant the relief requested on appeal.

Appellant also contends that Respondents should be barred from challenging the award of prejudgment interest because they did not object to the admission into evidence of the demand offers. Allowing documents to be admitted as evidence of what was sent to Appellant is not the same, however, as Appellant conceding that the documents satisfied the requirements of § 408.040.2.

In short, the record simply does not establish that Appellant waived his claims related to pre-judgment interest in this case. Accordingly, we must address the merits of Appellant's claim.

Appellant argues that the trial court erred in awarding prejudgment interest because Respondents' § 408.040 demand offer did not comply with the requirements of that statute. He contends that the demands did not contain lists of the names and addresses of medical providers that had treated the decedent for his injuries and did not include written authorizations sufficient to allow him to obtain records from the

5

decedent's employers and medical care providers and, therefore, violated the express terms of the amendments to § 408.040 in 2005.[6]

Section 408.040.2 "authorizes a court to grant prejudgment interest if a party meets the requirements in the statute." *Hayes v. Price*, 313 S.W.3d 645, 653 (Mo. banc 2010). "Determination of the right to pre-judgment interest is reviewed *de novo* because it is primarily a question of statutory interpretation and its application to undisputed facts." *Good Hope Missionary Baptist Church v. St. Louis Alarm Monitoring Co.*, 358 S.W.3d 528, 531 (Mo. App. E.D. 2012) (internal quotation omitted and italics added).

Pursuant to § 408.040.2,[7] "[i]n tort actions, if a claimant has made a demand for payment of a claim or an offer of settlement of a claim, to the party, parties or their representatives, and to such party's liability insurer if known to the claimant, and the amount of the judgment or order exceeds the demand for payment or offer of settlement, then prejudgment interest shall be awarded." Section 408.040.2 specifies, however, that:

> [i]n order to qualify as a demand or offer pursuant to this section, such demand must:
>
> (1) Be in writing and sent by certified mail return receipt requested; and
>
> (2) Be accompanied by an affidavit of the claimant describing the nature of the claim, the nature of any injuries claimed and a general computation of any category of damages sought by the claimant with supporting documentation, if any is reasonably available; and

---

[6] In the argument portion of his brief, Appellant argues that Respondents also failed to comply with § 408.040.2 by failing to provide reasonably available bills from Truman Medical Center. "Our review is limited, however, to those issues raised in an appellant's point relied on." *Sparks v. Sparks*, 417 S.W.3d 269, 291 n.21 (Mo. App. W.D. 2013) (citing *Rule 84.04(e)*). "Issues that are raised only in the argument portion of the brief and are not contained in the point relied on are not preserved for appellate review." *Manzella v. Director of Revenue*, 363 S.W.3d 393, 395 (Mo. App. E.D. 2012) (internal quotation omitted).

[7] All statutory references are to RSMo 2000 updated through the 2012 Cumulative Supplement.

6

(3)  For wrongful death, personal injury, and bodily injury claims, *be accompanied by a list of the names and addresses of medical providers who have provided treatment to the claimant or decedent for such injuries*, copies of all reasonably available medical bills, a list of employers if the claimant is seeking damages for loss of wages or earnings, *and written authorizations sufficient to allow the party, its representatives, and liability insurer if known to the claimant to obtain records from all employers and medical care providers*; and

(4)  References this section and be left open for ninety days.

(emphasis added).  These itemized requirements for a demand or offer were added when the statute was amended in 2005.  ***Good Hope Missionary Baptist Church***, 358 S.W.3d at 531.  "For a party to receive prejudgment interest, the settlement demand must be proper."  ***Hayes***, 313 S.W.3d at 653.  Indeed, the Missouri Supreme Court has indicated that the requirements of § 408.040.2 must be satisfied regardless of whether the defendant suffered any prejudice as a result.  In ***Emery v. Wal-Mart Stores, Inc.***, 976 S.W.2d 439, 448-49 (Mo. banc 1998), the court held that failure to comply with the registered mail requirement of § 408.040.2 rendered the demand offer ineffective to obtain prejudgment interest even though the defendant did not deny receipt of the offer and evidence was introduced that he had actual notice of the offer.

Respondents acknowledge, and the record clearly reflects, that they did not provide Appellant with written authorizations to allow Appellant to obtain any of the decedent's medical or employment records.  Respondents argue, however, that the language of § 408.040.2 should be read only to apply to individual plaintiffs who have the legal authority to personally execute such authorizations.  They contend that any plaintiff without such authority is meant to be exempt from this requirement.  Respondents note that Karen Hawley, as decedent's legal representative, was the only

7

party in this action that had the authority to execute authorizations for the medical and employment records of the decedent and argue that all of the other plaintiffs should be deemed to have fully complied with the statute. They further argue that Karen Hawley should be deemed to have sufficiently complied with the statute under the specific facts of this case because medical and employment records were not necessary for Appellant to realize that Respondents damages were in excess of the amount demanded in settlement.

"In interpreting statutes, this Court ascertains the intent of the legislature from the plain and ordinary language used and, if possible, gives effect to that intent." *Hayes*, 313 S.W.3d at 654. "In determining legislative intent, statutory words and phrases are taken in their ordinary and usual sense." *Id*. (internal quotation omitted). "'[W]hen statutory language is clear, courts must give effect to the language as written' and 'are without authority to read into a statute a legislative intent contrary to the intent made evident by the plain language.'" *English v. Empire Dist. Elec. Co.*, 220 S.W.3d 849, 857 (Mo. App. S.D. 2007) (quoting *Emery*, 976 S.W.2d at 448-49).

The plain language of § 408.040.2 requires that a demand offer in a wrongful death case, to be effective, must be accompanied by certain documentation, including "written authorizations sufficient to allow the party . . . to obtain records from all employers and medical care providers." Indeed, the statute was amended by the legislature in 2005 to specifically require that the listed documents be provided with the demand. Such amendment reflects a legislative intent that defendants have the benefit of the required documents and the ability to access and review medical and employment records in assessing whether to accept the offer of settlement.

8

This Court need not determine whether there might be instances in which impossibility or even significant difficulty in obtaining the required authorizations or other documents could absolve a plaintiff of having to provide such documents and still allow for an award of prejudgment interest. Section 408.040.2 clearly requires, at the very least, that plaintiffs make a good faith, legitimate effort to provide the required documents, and in the case at bar, there was no evidence, or even a bare assertion, that any of the Respondents made any attempt to obtain the required authorizations or that they had or would have had any difficulty obtaining such authorizations from fellow plaintiff Karen Hawley.

Respondents also attempt to argue that their affidavits and the other documents that were supplied contained enough information to allow Appellant to assess liability and that the damages that would be awarded would exceed the amount of the offer of settlement and that they, therefore, sufficiently satisfied the purpose of the statute. In enacting § 408.040.2, the legislature clearly intended for defendants to have more than the sworn assertions of the plaintiff or plaintiffs from which to assess liability and damages. As noted *supra*, in **Emery v. Wal-Mart Stores, Inc.**, 976 S.W.2d 439, 448-49 (Mo. banc 1998), the Missouri Supreme Court effectively held that the requirements of § 408.040.2 must be satisfied regardless of whether the defendant suffered any prejudice as a result. Specifically, the Court held that failure to comply with the registered mail requirement of § 408.040.2 rendered the demand offer ineffective to obtain prejudgment interest even though the plaintiff did not deny receipt of the offer and evidence was introduced that he had actual notice of the offer. **Id.** In so doing, the Court emphasized that "when statutory language is clear, courts must give effect to the

9

language as written" and "are without authority to read into a statute a legislative intent contrary to the intent made evident by the plain language." *Id.* We are required to "regard the statute as meaning what it says." *Id*. at 449.

As Respondents failed to comply with the requirements for a demand offer under § 408.040.2 by neglecting to provide the requisite authorizations, they were not entitled to prejudgment interest under that statute. The trial court erred in concluding otherwise.[8] Accordingly, the award of prejudgment interest is reversed.

In his remaining point, Appellant claims that the trial court erred in finding that Respondents sustained a total of $14,000,000 in actual damages. Appellant argues that this award substantially exceeds what is fair and reasonable for the injuries and damages allowable under the wrongful death statute and is against the weight of the evidence.

As this was a court-tried case, the trial court's judgment must be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Gateway Foam Insulators, Inc. v. Jokerst Paving & Contr., Inc.*, 279 S.W.3d 179, 184 (Mo. banc 2009) (citing *Murphy v. Carron*, 536 S.W.23d 30, 32 (Mo. banc 1976)). "The amount of damages to be awarded in a personal injury case is left to the discretion of the trial court." *Meier v. Schrock*, 405 S.W.3d 31, 35 (Mo. App. E.D. 2013). "Because the trial court, rather than this Court, weighs the evidence, this Court's review of the damages awarded is limited to a determination of whether the verdict reflects the substantial evidence presented." *Gateway Foam Insulators*, 279 S.W.3d at 184.

---

[8] Having reached this conclusion, we need not address the parties arguments related to the list of medical care providers and whether what was provided was sufficient to satisfy that requirement.

"There is no precise formula for determining whether a verdict is excessive, and each case must be considered on its own facts with the ultimate test being what fairly and reasonably compensates plaintiffs for the injuries sustained." *Lopez v. Three Rivers Elec. Coop.*, 92 S.W.3d 165, 175 (Mo. App. E.D. 2002) (overruled in part on unrelated grounds in *Joy v. Morrison*, 254 S.W.3d 885 (Mo. banc 2008)). In making that determination, the evidence must be viewed in the light most favorable to respondents, giving them the benefit of all reasonable inferences and disregarding evidence and inferences to the contrary. *Gateway Foam Insulators*, 279 S.W.3d at 184. "We will not disturb the trial court's determination on the issue of damages unless the award is manifestly unjust or the amount awarded is so shockingly and grossly inadequate as to indicate passion or prejudice." *Meier*, 405 S.W.3d at 35.

With regard to damages in a wrongful death action, § 537.090 provides:

> In every action brought under section 537.080, the trier of the facts may give to the party or parties entitled thereto such damages as the trier of the facts may deem fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death . . .. In addition, the trier of the facts may award such damages as the deceased may have suffered between the time of injury and the time of death and for the recovery of which the deceased might have maintained an action had death not ensued.

In the case at bar, medical and funeral bills totaling $28,853.73 were admitted into evidence. Respondents also elicited testimony from their economics expert, Dr. John Ward, regarding certain economic losses resulting from the decedent's death. Dr. Ward estimated the loss of financial support resulting from Decedent's death, in light of his life expectancy and average income, was $2,325,517. He estimated the economic

11

value of the loss in household services provided by Decedent to be $437,293 and the loss of Decedent's property management services to be $658,926. These economic losses total $3,421,735. While Appellant seeks to make much of the fact that the total award is over four times larger than the economic losses reflected in the evidence, "there is no bright-line rule that non-economic damages cannot exceed economic damages by any certain multiplier." *Delacroix v. Doncasters, Inc.*, 407 S.W.3d 13, 37 (Mo. App. E.D. 2013) (internal quotation omitted).

"Non-economical losses for wrongful death require this court to properly consider the reasonable value of services, consortium, companionship, comfort, instruction, guidance, counsel, training and support denied [Respondents] by reason of Decedent's death." *Evans v. FirstFleet, Inc.*, 345 S.W.3d 297, 304 (Mo. App. S.D. 2011) (internal quotation omitted). "Section 537.090 'is clear that in determining damages, the fact finder considers losses with references to the particular persons on whose behalf the suit was brought and the relationship of the deceased with those particular persons.'" *Id*. at 305 (quoting *Call v. Heard*, 925 S.W.2d 840, 851 (Mo. banc 1996)). "'In other words, an element of the total damages is based upon the relationship between the deceased and each individual party to the action.'" *Id*. (quoting *Call*, 925 S.W.2d at 851). "In computing the loss of consortium for the loss of a parent for a child, or the loss of a child for a parent, factors such as the physical, emotional, and psychological relationship between the parent and child must be considered." *Lopez*, 92 S.W.3d at 175.

In this case, the trial court had to assess the non-economic damages sustained by six different people. At trial, extensive evidence was introduced regarding the loss of

12

consortium by Karen Hawley and the loss of companionship by all of plaintiffs. They each testified about the extremely close and loving relationship they had with Decedent, the significant contact he had with them, and the guidance and help that he regularly provided to them.

Respondents were also entitled to recover for the pain and suffering sustained by Decedent prior to death. *Delacroix*, 407 S.W.3d at 37. "The range between an inadequate award and an excessive award for pain and suffering can be enormous." *Id*. (internal quotation omitted).

As a result of the accident, Decedent sustained blunt force trauma to the head and neck; blunt force injuries to the chest and abdomen; fractures of several vertebrae, the right clavicle, mid-sternum, and multiple ribs; an open compound fracture of the left humerus; and multiple lacerations and abrasions. Testimony was admitted reflecting that Decedent was conscious and awake when he arrived at the emergency room and that he did not die until over four hours after the accident. The trial court could reasonably have concluded that Decedent experienced a significant amount of pain and suffering as a result of the accident.

Viewed in the light most favorable to Respondents, the record contains substantial evidence supporting the trial court's compensatory damages award. In light of the evidence presented, the verdict was not grossly excessive. *See Lopez*, 92 S.W.3d at 176 (holding compensatory damages awards of $11,000,000 to four wrongful death claimants of one decedent and $10,000,000 to four wrongful death claimants of another decedent were not excessive even though the evidence of total economic loss presented at trial related to each decedent was less than $1,500,000); *Delacroix*, 407

13

S.W.3d at 37 (holding an award of $20,000,000 in compensatory damages to five wrongful death claimants was not excessive even though evidence of economic damages was less than half of that); ***Martin v. Survivair Respirators, Inc.***, 298 S.W.3d 23, 35 (Mo. App. E.D. 2009) (holding not to be excessive an award of $12,000,000 in compensatory damages to a decedent firefighter's wife, three children, and mother). Point denied.

For the foregoing reasons, the trial court's award of prejudgment interest is reversed. In all other respects, the judgment is affirmed.

_____
Joseph M. Ellis, Judge

All concur.

14