

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | |
|---|---|
| KIMBERLY ABRAM, ET AL., | ) No. ED110631 |
| | ) |
| Respondents, | ) Appeal from the Circuit Court of |
| | ) Jefferson County |
| vs. | ) |
| | ) Honorable Troy A. Cardona |
| TITLEMAX OF MISSOURI, INC., | ) |
| | ) |
| Appellant. | ) Filed: November 21, 2023 |

### Introduction

TitleMax of Missouri, Inc. ("TitleMax") appeals the circuit court's judgment overruling its motion to compel arbitration against Kimberly Abram, John Adams, Camille Adkins, Kendra Akers, Marian Alexander, Tracy Allen, Varnice Allen, Melvin Allman, Stephanie Alyadumi, and Lemont Amos, Jr.[1] TitleMax raises two points on appeal. In Point I, TitleMax alleges the circuit court erred in overruling its motion to compel arbitration because the parties entered into valid and enforceable loan agreements which contained valid arbitration agreements TitleMax is entitled to enforce.[2] In Point II, TitleMax argues the circuit court erred in overruling its motion to compel arbitration because several, but not all, of Plaintiffs' loan

---

[1] This Court will refer to the ten named Plaintiffs in this appeal collectively as "Plaintiffs," Kimberly Abram individually as "Abram," and the remaining nine named Plaintiffs as "other nine Plaintiffs" throughout this opinion for clarity. All Plaintiff names are spelled as reflected by the entries of the parties and attorneys of record on Case.net.
[2] Plaintiffs characterize TitleMax's loan agreements as "title loans." TitleMax asserts it provides "consumer installment loans." This Court need not resolve this dispute to dispose of the appeal and will refer to the documents as "loan agreements."

agreements contained delegation clauses requiring the arbitrator to resolve threshold issues of arbitrability.

This Court holds the circuit court did not err in overruling TitleMax's motion to compel arbitration under our standard of review directing us to affirm the circuit court's judgment on any ground supported by the record. Here, nine of the named Plaintiffs, save Abram, availed themselves of the arbitration process through the American Arbitration Association ("the AAA"), which advised those other nine Plaintiffs they could pursue their claims in court after the AAA administratively closed their arbitration proceedings because TitleMax failed to comply with the AAA's consumer rules.[3] This Court likewise finds Abram was entitled to file her claim in the circuit court because the AAA declined to administer any other claims between TitleMax and its consumers at that time due to TitleMax's failure to comply with the AAA's consumer rules. Because AAA Consumer Rule R-1(d) authorized Plaintiffs to submit their disputes to the circuit court after the AAA declined to administer their arbitrations, the circuit court did not err in failing to order the parties to engage in further arbitration proceedings. The circuit court's judgment is affirmed.

**Factual and Procedural Background**

*The Loan Agreements*

The parties have been engaged in protracted litigation over loan agreements Plaintiffs purportedly entered into with TitleMax secured by liens on the borrowers' vehicles. Although the standardized form TitleMax requires its borrowers to sign has been revised over time, each of the seven loan agreement versions submitted to the circuit court contains arbitration agreements and invoke governance of the Federal Arbitration Act, 9 U.S.C. §1 *et seq*. Each loan agreement version

---

[3] All references to the AAA Consumer Rules are to those Rules Amended and Effective September 2014, with Costs of Arbitration Amended and Effective September 2, 2018.

contains arbitration provisions addressing delegation. The April 2007, February 2010, and June 2010 arbitration agreements define "dispute" to include, "all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of the Arbitration Provision and any claim or attempt to set aside this Arbitration Provision" as a dispute to be submitted to the arbitrator. In contrast, the November 2015, January 2016, September 2017, and March 2019 arbitration agreements state "dispute" "does not include disputes about the validity, coverage, or scope of this [arbitration] Clause or any part of this [arbitration] Clause. These are for the court and not the [arbitrator] to decide." All versions provide a chosen arbitration organization's rules apply to the extent they do not conflict with the arbitration agreement's language. All versions require consumer disputes to be resolved individually and bar class arbitration.

*Plaintiffs' Pre-Suit Demands for Arbitration*

In January 2019, Plaintiffs' counsel sent a letter to TitleMax's legal department with the subject line, "Re: Intent to Arbitrate." The letter explained Plaintiffs' counsel represented 834 TitleMax consumers (collectively, "consumers") and attached a list of purported consumers. The letter further stated, "Please let this letter serve as written notice of each client's intent to arbitrate individually with TitleMax." The letter continued, "As a preliminary matter, each client seeks a determination from an arbitrator whether the respective Arbitration Provisions are valid or otherwise enforceable, and if so, whether each client's dispute with TitleMax is within the scope of the respective Arbitration Provisions." The letter contained eight claims for relief to be determined by either the arbitrator or the circuit court. The letter concluded:

> Each client selects the [AAA] to administer the arbitration. The filing fee for each client to initiate arbitration with the AAA is $200. TitleMax has agreed to advance each of our client's expenses associated with the arbitration under the respective

Arbitration Provisions for each client.[4] Therefore, we demand $166,800, so we may initiate 834 individual arbitrations against TitleMax.

TitleMax's legal department rejected Plaintiffs' counsel's demand to advance the filing fees, stating the consumer list provided was inadequate to identify specific TitleMax consumer accounts. TitleMax's legal department requested Plaintiffs' counsel provide additional identifying information within thirty days or it would "not respond further and [would] consider this demand closed."[5] TitleMax's legal department stated, "[I]f these alleged claims are properly filed with the [AAA], TitleMax will tender its arbitration fees, if any, directly to the AAA upon its request." TitleMax's legal department did not object to these consumers choosing the AAA as its arbitral tribunal.[6]

Plaintiffs' counsel responded by removing duplicate clients from its list, which reduced the number of purported TitleMax consumers from 834 to 803 borrowers. Plaintiffs' counsel reiterated, "Under the respective Arbitration Provisions for each client," TitleMax agreed to "advance" their expenses associated with the arbitration and stated failure to comply with the arbitration provisions resulted in default "in proceeding with these individual arbitrations." Plaintiffs' counsel disavowed having an obligation to provide additional identifying information under the arbitration provisions, but agreed to provide additional identifying information for

---

[4] Not every arbitration agreement version contains the "advance" language upon which Plaintiffs relied. The April 2007, February 2010, and June 2010 arbitration agreements provide: "Regardless of who demands arbitration, [TitleMax] will advance your portion of the expenses associated with the arbitration, including the filing, administrative, hearing, and arbitrator's fees." The later four agreements provide TitleMax "will pay all filing, administrative, hearing and [arbitrator] fees" if the consumer "act[s] in good faith, cannot get a waiver of such fees, and ask[s] us to pay." The record is unclear which Plaintiffs are entitled to an advancement of fees under the three earlier agreements and which Plaintiffs have to demonstrate good faith, lack of a waiver, and submit a request for payment under the later four agreements.

[5] None of the arbitration agreements contain language permitting TitleMax to unilaterally "close a demand" or reject a consumer's demand for arbitration.

[6] The first five loan agreements list the AAA as a possible arbitral tribunal. The last two loan agreements do not list the AAA as a possible arbitral tribunal, but permit the use of "any other company the parties choose together." There is no evidence in the record the parties chose any other arbitral tribunal than the AAA or that TitleMax lodged any objection to the AAA serving as the chosen arbitral tribunal.

4

consumers who shared the same name. Plaintiffs' counsel also offered to investigate any name TitleMax maintained was never a consumer. Otherwise, Plaintiffs' counsel indicated they would "pursue arbitration upon being advanced the filing fee as requested by the Arbitration Provision."

In response, TitleMax's legal department restated its reasoning for rejecting Plaintiffs' counsel's demand to advance the arbitration filing fees to Plaintiffs' counsel directly. TitleMax's legal department stated it had no obligation to provide a cross-referenced consumer list. TitleMax's legal department requested a signed authorization for each individual on the list. TitleMax disavowed violating the arbitration provisions and alleged these consumers had yet to comply with TitleMax's "Notice and Cure" requirements.[7] TitleMax's legal department repeated it had no contractual obligation to tender arbitration filing fees directly to Plaintiffs' counsel; instead, TitleMax maintained it was obligated to advance those fees to the arbitrator as defined by the arbitration agreement. TitleMax's legal department repeated, if the additional information requested was not provided within thirty days, it would consider the demand closed.

On October 11, 2019, TitleMax's counsel reminded Plaintiffs' counsel of their clients' obligation to "honor their agreement to submit their disputes to individual arbitration with [the AAA]." TitleMax's counsel reiterated it stood "ready and willing to advance its consumers'

---

[7] No "Notice and Cure" provisions are in the April 2007, February 2010, and June 2010 arbitration agreements. Those agreements allow a party simply to demand arbitration by providing a written demand stating the party's intent to arbitrate, naming the dispute and the relief requested, and selecting an arbitrator. The "Notice and Cure" provisions were added to the fourth version of TitleMax's arbitration agreement in November 2015, and remained going forward. These provisions generally require a consumer to include his or her individual TitleMax account number, mailing address on file, and to comply with TitleMax's request for additional information. These provisions also required the parties to operate within a thirty-day window to resolve their dispute. The agreements with "Notice and Cure" requirements also contain nearly identical demand provisions stating if the parties have not resolved their dispute within thirty days of the notice, the complaining party may initiate a lawsuit or arbitration. If one party begins or threatens a suit, the other party may demand arbitration. These versions of the arbitration agreement do not require specific language be included in the demand for arbitration after the thirty-day window closes. None of the versions delineate consequences for a party's alleged failure to comply with any notice or demand requirement. TitleMax maintained all consumers were required to comply with the Notice and Cure provisions before initiating arbitration. Yet, the record is unclear which Plaintiffs were bound by what arbitration agreement versions containing the Notice and Cure provisions TitleMax cited in this letter.

arbitration fees to AAA if and when any individual claims are filed in full accord with the terms of its consumers' respective agreements." This letter explained how the AAA would provide TitleMax with an invoice to remit payment for the clients' filing fees once their individual arbitration claims were submitted. TitleMax did not threaten to close Plaintiffs' demand for not providing additional identifying information as it had in prior correspondence nor did TitleMax object to the AAA as Plaintiffs' chosen arbitral tribunal.

Four days later, on October 15, 2019, a number of Plaintiffs filed their demand for arbitration with the AAA.[8] The AAA demand form contained a brief explanation of the dispute:

> *Each consumer* disputes the title loan agreement with TitleMax and the repossession and disposition of *each consumer's* property. TitleMax breached its title loan agreements (if valid) and also failed to give the requisite right to cure, presale, and post-sale notices. TitleMax also breached its arbitration agreement (if valid) and *each consumer* disputes whether the claims are within the scope of the arbitration agreement, and whether the arbitration agreement is valid, enforceable, or otherwise subject to arbitration.

Emphasis added.

On November 4, 2019, the AAA issued a letter ("AAA Letter") to Plaintiffs' counsel and TitleMax's counsel regarding the other nine Plaintiffs, listed under a single case number, stating, "Claimant has filed with us a demand for arbitration." The AAA Letter noted "the arbitration clause provides for arbitration by the AAA," but "[p]rior to the filing of this arbitration, TitleMax . . . failed to comply with AAA's policies regarding consumer claims."[9] The AAA Letter cited its Consumer Due Process Protocol, its Consumer Arbitration Rules, and its Costs of Arbitration. The AAA declined "to administer this claim and any other claims between TitleMax . . . and its

---

[8] Plaintiffs maintain they "initiated 10 test arbitrations" at this time, which included all named Plaintiffs in this appeal. The demand for arbitration form submitted to the AAA and contained in this record states in the "Name" box: "Each Consumer on Exhibit A (individually)." Exhibit A is not included in the legal file or the circuit court's record so it is unclear which consumers filed this demand. Yet, the parties do not dispute this demand included the other nine Plaintiffs. The form lists Plaintiffs' counsel's contact information as "consumer's representative" and lists TitleMax as the business and TitleMax's counsel as the "business representative."

[9] The AAA Letter does not elaborate on which version of "the arbitration clause" it reviewed.

6

consumers at this time" and administratively closed the file. The AAA Letter cited AAA Rule R-1(d) providing that, should the AAA decline to administer arbitration, "either party may choose to submit its dispute to the appropriate court for resolution." The AAA Letter further stated, "If TitleMax . . . wishes for the AAA to consider accepting consumer disputes going forward, the business must, at a minimum, register its clause on the Consumer Clause Registry" on the AAA's website. The AAA Letter concluded, "Upon completion of the registration process and confirmation from the AAA that the business is now active on the Consumer Clause Registry, the business is responsible for informing all parties that Claimant may re-file their claim."

*Plaintiffs' State Court Lawsuit*

Two and three days later, on November 6 and 7, 2019, Plaintiffs' counsel filed ten lawsuits, with each suit asserting individual claims on behalf of ten plaintiffs per suit.[10] These ten identical suits against TitleMax alleged five counts: (I) a private right of action under chapter 367 regulating pawnbrokers and small loans; (II) chapter 408 violations regulating legal tender and interest; (III) Uniform Commercial Code violations; (IV) breach of contract; and (V) breach of the arbitration agreement. Plaintiffs alleged they signed a standardized form for a "title loan" agreement secured by his or her motor vehicle title. Plaintiffs alleged TitleMax acted as a "title lender" without a "title loan license" for each plaintiff's agreement. Plaintiffs raised Count IV, breach of contract, in the alternative to Count I for each plaintiff found to have a valid and enforceable "title loan" agreement. Plaintiffs brought Count V, breach of the arbitration agreement, "for each plaintiff who TitleMax maintains is bound by a valid and enforceable arbitration agreement." Plaintiffs

---

[10] The other nine lawsuits initiated the underlying proceedings in the companion appeals handed down this same date: *Anderson et al. v. TitleMax of Missouri, Inc.*, No. ED110629; *Arteaga et al. v. TitleMax of Missouri, Inc.*, No. ED110625; *Baker et al. v. TitleMax of Missouri, Inc.*, No. ED110628; *Beckermann et al. v. TitleMax of Missouri, Inc.*, No. ED110630; *Birmingham et al. v. TitleMax of Missouri, Inc.*, No. ED110632; *Bollin et al. v. TitleMax of Missouri, Inc.*, No. ED110624; *Bracy et al. v. TitleMax of Missouri, Inc.*, No. ED110626; *Brizendine et al. v. TitleMax of Missouri, Inc.*, No. ED110633; and *Brown et al. v. TitleMax of Missouri, Inc.*, No. ED110627.

alleged TitleMax agreed to pay all filing, hearing, and third-party arbitrator fees. Plaintiffs demanded TitleMax advance or pay these fees so each plaintiff could file an individual arbitration for covered disputes. Plaintiffs maintained they acted in good faith, they could not get a fee waiver, and TitleMax refused to advance or pay the fees. Plaintiffs averred TitleMax breached the arbitration agreements by failing to comply with the AAA's policies regarding consumer claims. Plaintiffs further alleged, "Because the AAA declined to administer any arbitration by TitleMax, each plaintiff bound by a valid and enforceable arbitration agreement that covers a dispute with TitleMax may submit his or her dispute to the appropriate court for resolution." Plaintiffs sought actual damages not less than the arbitration fees for Count V.

On December 24, 2019, TitleMax filed a notice of removal to federal court based on diversity jurisdiction. The federal district court remanded to state court in April 2020. After remand, Plaintiffs served TitleMax with discovery requests.

*TitleMax's Motion to Compel Arbitration*

In June 2020, TitleMax moved to compel arbitration and stay litigation. TitleMax argued Plaintiffs conceded they entered into valid and binding arbitration agreements applicable to the claims at issue because their petition alleged they signed loan agreements with TitleMax containing arbitration provisions. TitleMax also cited Plaintiffs' pre-suit demand for arbitration providing written notice of Plaintiffs' intent to submit their claims to individual arbitration with the AAA. TitleMax maintained these documents constituted admissions each of their disputes were encompassed by, and subject to, the loan agreements' arbitration provisions. In support of its motion to compel, TitleMax submitted an affidavit from its compliance manager ("2020 affidavit"). The 2020 affidavit averred every borrower had to sign TitleMax's standardized form containing an arbitration provision before the loan was secured. The 2020 affidavit explained

8

TitleMax has used seven versions of the loan agreement with its Missouri consumers and all versions contained arbitration provisions. The 2020 affidavit contained a table listing the date, the loan agreement version, and all plaintiffs who purportedly signed which version of the loan agreement. The 2020 affidavit disavowed knowledge of Plaintiffs commencing or attempting to commence any arbitration against TitleMax with the AAA before suing. The 2020 affidavit averred learning about "the filing of a single arbitration on behalf of one person claiming to be a TitleMax customer" after Plaintiffs sued. The 2020 affidavit explained it did not receive notice of this attempted arbitration, but only learned of the arbitration after the AAA notified TitleMax there was an issue with the registration of its loan agreements. The 2020 affidavit stated TitleMax promptly resolved the issue and informed Plaintiffs the issue was resolved. The 2020 affidavit attached twelve exhibits, seven of which were blank, unsigned or redacted versions of the loan agreements purportedly signed by Plaintiffs, four exhibits containing correspondence documenting consumers' pre-suit demands for arbitration and TitleMax's responses, and one exhibit regarding TitleMax's attempt to identify consumers after suit was filed. The 2020 affidavit did not include correspondence or documents related to the individual arbitration attempt, the notification from the AAA regarding the registration issue, or TitleMax's resolution of the issue, all which TitleMax averred occurred in the fall of 2019. TitleMax also moved to stay discovery.

Plaintiffs opposed TitleMax's motion to compel arbitration, arguing, among other things: (1) TitleMax failed to meet its burden to prove an arbitration agreement existed; (2) TitleMax waived any purported arbitration agreement; (3) the agreements, if they existed and were not waived, were unconscionable; and (4) discovery may reveal additional arbitration defenses. Plaintiffs argued TitleMax attached no signed loan agreements to the 2020 affidavit. Plaintiffs further contended TitleMax waived arbitration by refusing to advance or pay the arbitration filing

9

fees as directed in the arbitration provisions, through its delay, and by failing to comply with the AAA's policies, including registering its arbitration agreements as stated in the AAA Letter. Plaintiffs argued it would have been futile for each plaintiff to initiate arbitration given the AAA Letter. Plaintiffs further argued TitleMax's insistence they do so only further delayed and frustrated arbitration of Plaintiffs' claims. Plaintiffs attached correspondence from TitleMax's counsel, the October 2019 AAA demand form, and the AAA Letter. The parties noticed this motion for a hearing on August 11, 2020.

On August 11, 2020, a docket entry states, "Hearing Held." The docket entry does not reflect whether the motions noticed for the hearing were submitted or remained pending.[11] No transcript from this proceeding was included in the legal file for this Court for review.

On December 7, 2021, a docket entry reflects TitleMax's counsel filed a proposed order ("Proposed Order") "tak[ing] up the [p]arties' request at the December 7, 2021 Pre-Trial Conference to enter their stipulated schedule" for supplemental filing on the motion to compel arbitration, motion to compel discovery, and motion to stay discovery characterized as "pending." The Proposed Order stated, "Pursuant to the [p]arties' agreement and for good cause shown . . ." the request would be granted and the proposed scheduling order would become effective. The Proposed Order stated a hearing was set for March 1, 2022. Although both TitleMax's and Plaintiffs' counsels signed the Proposed Order, the circuit court did not sign the Proposed Order

---

[11] TitleMax asserts in its appellant's brief, "[A]t the August 11, 2020 hearing, the … parties agreed to leave their motions pending while they explored an out-of-court mediation." Plaintiffs' respondent's brief asserts, "On August 11, 2020, the trial court held a hearing on TitleMax's motion to compel, heard arguments from the parties, and took the matter under advisement." The docket entry is silent regarding an alleged agreement to enter mediation as TitleMax contends in its brief.

and no other signed order exists in the record reflecting approval of the parties' "stipulated schedule" for supplemental filing.[12]

Nevertheless, the parties persisted with their supplemental filing schedule on whether arbitration should be compelled. Setting aside for the moment whether the supplemental filing was properly before the circuit court, and by extension, properly included in the record on appeal before this Court, TitleMax filed its supplement and reply supporting its motion to compel arbitration on January 4, 2022. TitleMax included a second affidavit from its compliance manager ("2022 affidavit") detailing TitleMax's effort to verify which plaintiffs were TitleMax consumers and locate their executed loan agreements. The 2022 affidavit attached several new exhibits, including executed loan agreements and additional correspondence from TitleMax's counsel to the AAA about the AAA administratively closing Abram's purported arbitration before suing and to Plaintiffs' counsel alleging TitleMax cured the registration issue ("Supplemental December 2019 Letters"). The 2022 affidavit did not include correspondence from the AAA confirming TitleMax cured the registration issue, which the AAA Letter states it would provide before TitleMax could inform Plaintiffs about returning to arbitration.

When Plaintiffs failed to submit their supplemental filing under the "stipulated schedule," TitleMax filed a joint request for a continuance of the supplemental filing schedule and the March 2022 hearing. TitleMax filed a proposed order, "Pursuant to the [p]arties' agreement and for good cause shown" to adjust the "stipulated schedule" and continue the March 1, 2022 hearing. The circuit court did not sign this proposed order. Plaintiffs filed their supplemental response and offered no objection regarding whether the circuit court was authorized to accept the parties'

---

[12] During oral argument before this Court, TitleMax stated the circuit court "verbally agreed" to accept the Proposed Order during the December 7, 2021 pre-trial conference. No transcript from this proceeding was included in the legal file for this Court for review.

supplemental filing. A docket entry on March 1, 2022, reflects "Hearing Continued/Rescheduled" to April 25, 2022. TitleMax filed its supplemental reply.

On May 17, 2022, the circuit court held a hearing on the record. TitleMax's counsel stated:

> In our April 25th hearing, you called up our Motions to Compel Arbitration in each of those ten cases for argument.[13] I know you said you hadn't looked at the party submissions on the motions since 2021 . . . . I was hoping you might have looked at our more recent submissions and changed your mind. But I take it that that is not the case and that you're still planning to deny the motions. And we're just going to address the form of your order denying the motions. Is that correct?

The circuit court responded, "Yes." TitleMax's counsel continued:

> [A]s you anticipated in our last hearing, TitleMax . . . does plan to appeal your order denying the motion . . . we did not submit a Proposed Denial Order since we don't agree with that result. And I think you'd indicated you'd be entering your denial by stamping the motions as denied.

The circuit court responded, "Sounds good . . . ." The next day the circuit court summarily overruled TitleMax's motion to compel arbitration in all ten lawsuits, stating, "Hearing held. [TitleMax's] motion to compel arbitration is denied. The case is stayed pending the outcome of any appeal of this Order." TitleMax appeals.[14]

## Standard of Review

An appellate court's "review of the [circuit] court's determination as to the existence of an [arbitration] agreement itself is analogous to that in a court-tried case." *Theroff v. Dollar Tree*

---

[13] The docket entry for April 25, 2022, states, "Pre-Trial Conference Scheduled" and "Hearing Continued/Rescheduled." At oral argument, TitleMax's counsel stated "the court had not had a reporter present" for the prior hearings except the hearing held on May 17, 2022. Yet, the underlying circuit court record in this case reflects TitleMax filed a request for the official transcript from the April 25, 2022 hearing with the Jefferson County Circuit Court Official Court Reporter on April 27, 2022, listing all ten underlying lawsuits. This Court may take "[j]udicial notice of records from other related proceedings involving the same parties" upon the Court's own motion. *Ruff v. Bequette Constr., Inc.*, 669 S.W.3d 701, 707 n.3 (Mo. App. E.D. 2023). No transcript from this proceeding was included in the legal file for this Court for review. Further, TitleMax did not provide this Court with an affidavit from the circuit clerk or the court reporter indicating a transcript of the April 25, 2022 hearing was not made or could not be produced. *See Smith v. State*, 267 S.W.3d 829, 831 (Mo. App. E.D. 2008).

[14] The denial of a motion to compel arbitration is appealable under section 435.440, RSMo (2016). *St. Louis Reg'l Convention v. Nat'l Football League*, 581 S.W.3d 608, 613 n.3 (Mo. App. E.D. 2019).

*Stores, Inc.*, 591 S.W.3d 432, 436 (Mo. banc 2020) (quoting *Kunzie v. Jack-In-The-Box, Inc.*, 330 S.W.3d 476, 480 (Mo. App. E.D. 2010)). "On review of a court-tried case, an appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Ivie v. Smith*, 439 S.W.3d 189, 198–99 (Mo. banc 2014) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "[A] judgment in a court-tried case will be affirmed on any basis supported by the record." *Peoples Nat'l Bank, N.A. v. Fish*, 600 S.W.3d 273, 278 (Mo. App. E.D. 2020). "In reviewing a court-tried case, we review the evidence in a manner favorable to the judgment, disregarding contradictory evidence, and we defer to the trial court's credibility determinations." *Theroff*, 591 S.W.3d at 437 (quoting Rule 73.01(c)) ("With no written findings of fact, this Court views the facts 'as having been found in accordance with the result reached.'").

"If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party." *Sneil, LLC v. Tybe Learning Ctr., Inc.*, 370 S.W.3d 562, 567 (Mo. banc 2012). "Generally, the party not having the burden of proof on an issue need not offer *any* evidence concerning it." *White v. Dir. of Revenue*, 321 S.W.3d 298, 305 (Mo. banc 2010) (emphasis in original). "[T]he trier of fact has the right to disbelieve evidence, even when it is not contradicted." *Id.*

"If there is no factual dispute about the existence of an arbitration agreement, the overruling of a motion to compel arbitration is reviewed *de novo*." *Theroff*, 591 S.W.3d at 436. *Theroff* further explains "a *de novo* standard of review is appropriate for appellate review of a denial of a motion to compel arbitration when a court must analyze the terms of an arbitration agreement." *Id*. Because this opinion discusses whether the circuit court's judgment should be affirmed on the

basis of the AAA Letter, not the terms of any of the seven arbitration agreements, we apply the *Murphy v. Carron* standard to our analysis.

## Discussion

*Point I: Valid and Enforceable Arbitration Agreement*
*Party Positions*

TitleMax's first point relied on states, "The circuit court erred in denying TitleMax's motion to compel arbitration because the parties entered into valid and enforceable consumer installment loan agreements which contain arbitration provisions, in that the issues preserved for appeal show offer, acceptance, and valid consideration for agreements that TitleMax is entitled to enforce." In its argument supporting this point, TitleMax also contends Plaintiffs' claims are encompassed by the arbitration agreements which define "dispute" broadly. TitleMax further argues it did not waive its arbitration rights by declining to advance fees, failing to rectify issues that arose during Abram's arbitration proceeding, removing the cases to federal court, or delaying the proceedings.

Plaintiffs contend the circuit court properly overruled TitleMax's motion to compel arbitration because TitleMax must prove the existence of an arbitration agreement but presented no competent or substantial evidence to carry its burden. Plaintiffs further argue even if this Court finds valid and enforceable arbitration agreements exist, the circuit court's judgment should be affirmed because the AAA rules authorized Plaintiffs to submit their disputes to the circuit court after the AAA declined to administer Plaintiffs' arbitration as stated in the AAA Letter. Plaintiffs also assert TitleMax waived its right to arbitrate by refusing to advance the arbitration filing fees, delaying the proceedings, and acting inconsistently with its desire to arbitrate by failing to rectify issues arising during the pre-suit "test arbitration" proceeding. Finally, Plaintiffs offer several enforceability and validity challenges, such as arguing the loan agreements are void, illegal,

14

unconscionable, one-sided, constitute contracts of adhesion, are unlimited in scope, and are ambiguous.

*Analysis Introduction*

This case presents a protracted procedural history complicated by the challenges presented during the Covid-19 pandemic. The record here, though voluminous, lacks transcripts from hearings in which both parties contend critical decisions were made regarding the procedural posture of TitleMax's motion to compel arbitration and whether the circuit court authorized supplemental filing.[15] The resolution of this dispute is further complicated in part due to Plaintiffs' counsel presenting their clients' claims as though they stand on equal footing and in identical postures and TitleMax's counsel presenting its seven versions of the arbitration agreements as though they contain identical language, rights, and obligations. Neither position is valid nor supported by the record. The circuit court's judgment summarily overruling TitleMax's motion to compel arbitration as to all plaintiffs in all ten lawsuits provided this Court with no guidance as to the grounds for its decision. Yet, TitleMax did not request the circuit court issue findings of fact or a statement of the grounds for its decision as was its right under Rule 73.01(c).[16] This Court must examine all fact issues "as having been found in accordance with the result reached."

---

[15] Plaintiffs filed a motion to dismiss TitleMax's appeal for several reasons, one of which was the failure to provide relevant transcripts of the proceedings held on August 11, 2020, and April 25, 2022, during which Plaintiffs maintain pertinent arguments and evidence were presented regarding TitleMax's motion to compel arbitration. TitleMax faulted Plaintiffs for not contending those hearings were held on the record or for supplementing the record themselves despite it being TitleMax's duty to provide this Court with the record on appeal under Rule 81.12(a). TitleMax further maintained it "submitted the salient hearing transcript [from May 17, 2022] to the Court and did not withhold any other transcripts from the appeal." Accordingly, this Court finds TitleMax stands on the record presented to this Court to resolve the issues on appeal.

[16] All Rule references are to the Missouri Supreme Court Rules (2020), unless otherwise indicated. TitleMax had an explicit opportunity to request factual findings at the May 17, 2022 hearing when its counsel stated, "And we're just going to address the form of your order denying the motions. Is that correct?" TitleMax expressly declined to "submit a Proposed Denial Order since [it did not] agree" with the circuit court's ruling.

Rule 73.01(c). This Court "will affirm the judgment on any reasonable theory within the pleadings that is supported by the evidence." *Bolt v. Giordano*, 310 S.W.3d 237, 242 (Mo. App. E.D. 2010).

A reasonable theory supported by the pleadings and evidence properly before the circuit court and this Court to affirm the circuit court's judgment overruling TitleMax's motion to compel arbitration regarding *all* Plaintiffs—regardless of which version of the arbitration agreement they signed—is the AAA Letter authorizing Plaintiffs to file their disputes in the circuit court after the AAA declined to arbitrate.[17] In reaching this result, this Court confines its analysis to the issues preserved in the circuit court and properly raised on appeal with this Court, the exhibits appropriately admitted to the circuit court, and AAA Rule R-1(d), which was the only AAA Rule cited in the AAA Letter. Before explaining the effect and scope of the AAA Letter, however, this Court will address TitleMax's tangential arguments raised obliquely in their briefs and expressly during oral argument regarding the AAA's alleged rule or policy violations it believes renders this ground unsupported by the evidence.

*The AAA Letter's Validity*

All seven versions of the loan agreements state the chosen arbitral tribunal's consumer rules will apply to any arbitration proceeding. Because all of TitleMax's loan agreements specifically state the selected arbitral tribunal's rules will apply, and TitleMax never objected to the AAA as Plaintiffs' arbitral tribunal, this Court finds the AAA's rules are applicable and binding here. *See State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 45 (Mo. banc 2017) (finding

---

[17] TitleMax characterizes the AAA Letter as "unauthenticated" in two footnotes in its appellant's brief. Any challenge to the AAA Letter's authenticity has not been preserved for this Court's review. "In general, where there is no pleading or argument in the record concerning the issue presented on appeal and the issue is raised for the first time on appeal, it has not been preserved for review." *Lewis v. Lewis*, 671 S.W.3d 734, 741 (Mo. App. W.D. 2023) (quoting *In re S.H.P.*, 638 S.W.3d 524, 531 (Mo. App. W.D. 2021)). Nothing in the record before this Court shows TitleMax disputed the authentication of the AAA Letter or objected to its admission into the record before the circuit court, the issue was not raised in a point on appeal, and presenting the issue for the first time in two footnotes in the argument section of the brief is insufficient to invoke this Court's review.

reference to an arbitration company's rules "establishes the parties' intent to incorporate [those rules] into [their] agreement"). Hence, both Plaintiffs and TitleMax agreed the AAA's rules governed their dealings, insofar as the AAA rules did not conflict with the arbitration agreements' provisions.

To the extent TitleMax believes the circuit court's reliance on the AAA Letter to decline compelling further arbitration is misplaced due to the AAA's alleged rule violations regarding notice or permitting TitleMax to cure its failure to register the arbitration clauses in the AAA's registry, these claims are not preserved for appeal. Neither of TitleMax's points on appeal challenge the evidentiary basis upon which the circuit court's judgment is based nor do they raise any claim concerning the propriety of the AAA's actions whatsoever.[18] Rule 84.04(e) mandates, "The argument shall be limited to those errors included in the 'Points Relied On.'" "We will not afford even *ex gratia* review of an error raised in the argument section of an appellant's brief but not captured in an associated point relied on." *Wallace v. Byrne*, 672 S.W.3d 96, 106 (Mo. App. E.D. 2023). TitleMax briefly refers to the AAA's alleged rule violations in its statement of facts and discussed them during oral argument, but TitleMax raised no point on appeal arguing the circuit court erred in relying on the AAA Letter due to its alleged procedural deficiencies.[19] "Issues that are raised only in the argument portion of the brief and are not contained in the point relied on are not preserved for appellate review." *Hawley v. Tseona*, 453 S.W.3d 837, 842 n.6 (Mo. App.

---

[18] TitleMax's second point on appeal states, "The circuit court erred in denying TitleMax's motion to compel arbitration because the arbitrator must decide threshold questions of arbitrability, in that several Plaintiffs' agreements contain delegation clauses which delegate threshold questions of arbitrability to the arbitrator."

[19] TitleMax discusses the AAA proceedings and the alleged deficiencies with notice, registration, and the AAA's availability in the argument portion of its appellant's brief within the context of whether TitleMax waived its right to arbitrate by failing to cure the registration issue with the AAA. TitleMax also raises these arguments in response to Plaintiffs' assertion TitleMax has unclean hands. Whether TitleMax waived its right to arbitrate or has unclean hands are discrete claims of error distinct from whether the AAA violated its consumer rules in directing Plaintiffs they could proceed to arbitration after administratively closing their claims or whether the AAA was deemed unavailable triggering a requirement to seek an alternate arbitral tribunal under the various versions of the arbitration agreements.

W.D. 2014) (quoting *Manzella v. Dir. of Revenue*, 363 S.W.3d 393, 395 (Mo. App. E.D. 2012)). Further, an appellate court will decline to review arguments raised for the first time during oral argument. *State ex rel. Vacation Mgmt. Sols., LLC v. Moriarty*, 610 S.W.3d 700, 703 (Mo. banc 2020).

Insofar as TitleMax's brief could permit this Court to review the AAA's alleged rule violations, TitleMax urges this Court to rely upon its Supplemental December 2019 Letters in its supplemental filing. At oral argument, TitleMax asserted "there were two separate letters" from the AAA: the AAA Letter naming the other nine Plaintiffs and a second letter relating to Abram individually with a different AAA case number. The record does not contain any AAA demand form filed on Abram's behalf as it did for the other nine Plaintiffs nor does the record contain a letter from the AAA regarding Abram mirroring the AAA Letter regarding the other nine Plaintiffs. Setting aside TitleMax's failure to raise this issue as a claim of error in a point relied on or anywhere in the argument portion of its brief, there are two bases upon which the circuit court could have declined to rely on the Supplemental December 2019 Letters in reaching its decision.

First, as a practical matter, the record is unclear whether the Supplemental December 2019 Letters were properly submitted to the circuit court and available for its review in ruling on TitleMax's motion to compel arbitration. The record reveals a hearing occurred on August 11, 2020, regarding TitleMax's motion to compel arbitration. No transcript of this hearing was included in this Court's legal file for review. Rule 81.12(a) states, "The record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision. It is divided into two components: the legal file and the transcript." TitleMax, as the appellant, has a duty to provide this Court with transcripts necessary to resolve the issues raised on appeal.

Rule 81.12(c)(1). "Matters omitted from the record will not be presumed to be favorable to the appellant." *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 649 (Mo. banc 1997). TitleMax steadfastly maintains this transcript is not "salient" to this appeal, yet the parties contest whether TitleMax's motion to compel arbitration was submitted or left pending after the August 11, 2020 hearing. Further, "[w]e cannot accept the statements in a party's brief as a substitute for the record on appeal." *Tatum v. Tatum*, 577 S.W.3d 146, 153 (Mo. App. E.D. 2019) (quoting *Trout v. Gen. Sec. Servs. Corp.*, 8 S.W.3d 126, 130 (Mo. App. S.D. 1999)). The absence of a transcript leaves this Court unable to resolve what posture the motion to compel found itself in at the conclusion of the August 11, 2020 hearing.

TitleMax maintains the record supports a finding the motion to compel arbitration was pending based on the Proposed Order permitting the parties to submit supplemental filings. The record reveals the parties convened on December 7, 2021, for a pre-trial conference, at which time the Proposed Order providing a "stipulated schedule" to submit supplemental filings was filed by TitleMax's counsel and signed by both parties. Hence, TitleMax maintains the Supplemental December 2019 Letters were properly before the circuit court as part of its supplemental filing authorized by the Proposed Order. This Court disagrees.

Rule 62.01 governs case management conferences and provides, "*The court shall make an order* that recites the action taken at the case management conference. The order, when entered, controls the subsequent course of the action, unless modified to prevent manifest injustice." Emphasis added. The Proposed Order, submitted by TitleMax's counsel, stated, "Pursuant to the Parties' agreement and for good cause shown, the Court GRANTS the Parties' request and enters the following Order" so the parties could "enter their stipulated schedule on the following pending motions . . ." which included TitleMax's motion to compel arbitration. The Proposed Order was

19

signed by the parties, but the signature line for a judge's signature remained blank. The record is clear the circuit court did not sign the Proposed Order authorizing supplemental filing.

TitleMax's counsel explained during oral argument the circuit court was not expected to sign the Proposed Order because the circuit court "verbally agreed" to accept the scheduling and supplemental filing at the December 7, 2021 pre-trial conference. Plaintiffs' counsel responded during oral argument they "agreed there could be supplemental filings, but we didn't necessarily agree there could be supplemental evidence submitted." "An appellate court cannot accept counsels' statements or averments as substitute for record proof even if there is no reason to doubt counsels' accuracy." *Bertocci v. Thoroughbred Ford, Inc.*, 530 S.W.3d 543, 551 (Mo. App. W.D. 2017). Further, without a transcript, which TitleMax had a duty to provide under Rule 81.12(c)(1), this Court cannot resolve this factual dispute about what transpired at the December 7, 2021 pre-trial conference and whether the circuit court "verbally agreed" to accept supplemental filing.

Absent the circuit court's signature on the Proposed Order or a transcript of the proceedings confirming the circuit court's purported verbal agreement to do so, the record does not support a finding the supplemental filing was properly before the circuit court because the circuit court never made an order to that effect after the December 7, 2021 pre-trial conference as required under Rule 62.01. "Documents not considered by the [circuit] court and not made part of the record below . . . cannot be introduced into the record on appeal," and "we cannot consider them[.]" *In re J.M.*, 328 S.W.3d 466, 469 (Mo. App. E.D. 2010). Accordingly, the circuit court did not err if it disregarded the Supplemental December 2019 Letters.[20]

---

[20] This finding comports with TitleMax's repeated allegation the circuit court failed to examine or consider the supplemental filing, including stating on the record at the May 17, 2022 hearing, "I know you said you hadn't looked at the party submissions on the motions since 2021." Although TitleMax discusses the circuit court's failure to review the supplemental filing in the argument portion of its brief, it did not raise a separate point relied on challenging the circuit court's failure to consider the supplemental filing in overruling its motion to compel. TitleMax's counsel confirmed as such at oral argument by stating, "We are not contending in the first point that the error was the omission to review, although I would submit that is error." This Court is constrained from examining this argument because it

20

Second, if the record supported TitleMax's assertions the circuit court authorized the supplemental filing and left the record open to receive additional evidence, the circuit court still did not have to accept the Supplemental December 2019 Letters or any other exhibit—whether submitted through the supplemental filing or otherwise—as credible. The Supplemental December 2019 Letters averred TitleMax received no notice of Abram's arbitration proceeding and the AAA letter declining to administer Abram's arbitration was "diverted by a 'spam' filter." The Supplemental December 2019 Letters further challenged the AAA's determination TitleMax failed to register Abram's relevant arbitration clause because it did not believe clauses predating the AAA's registry had to be registered.[21] Yet, TitleMax formally requested the AAA undertake expedited review of Abram's arbitration language and register the clauses in her purported arbitration agreements. TitleMax also included correspondence to Plaintiffs' counsel dated January 28, 2020, as an exhibit to its supplemental filing. This letter indicated TitleMax resolved registering Abram's arbitration agreement and demanded Abram and "your other clients honor the terms of their arbitration agreements." Thus, TitleMax contends the January 28, 2020 letter, the 2020 and 2022 affidavits, and their pleadings demonstrate they rectified the registration issue, which compels all plaintiffs to return to arbitration.

The circuit court "is free to believe all, some, or none of the evidence offered to prove a contested fact, and the appellate court will not re-find facts based on credibility determinations through its own perspective." *Trs. of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*, 585 S.W.3d 269, 277 (Mo. banc 2019) (quoting *Ivie*, 439 S.W.3d at 205). Bearing in mind the Supplemental December 2019 Letters and the January 28, 2020 letter were drafted by TitleMax,

was not raised in a point relied on, *Hawley*, 453 S.W.3d at 842 n.6, nor can we examine arguments raised for the first time at oral argument. *Vacation Mgmt. Sols.*, 610 S.W.3d at 703.

[21] There is no correspondence in the record from TitleMax to the AAA and/or Plaintiffs' counsel with respect to the AAA Letter addressing the other nine Plaintiffs.

were in its possession, and could have been filed with the other correspondence attached to the 2020 affidavit, they were not. Instead, these letters were presented for the first time in the supplemental filing, and to the extent the circuit court may have considered these exhibits, it was free to disbelieve these self-serving statements. *See Baier v. Darden Rests.*, 420 S.W.3d 733, 739 (Mo. App. W.D. 2014) and *Sneil*, 370 S.W.3d at 567 ("'[T]he trier of fact has the right to disbelieve evidence, even when it is not contradicted.'" (quoting *White*, 321 S.W.3d at 307)). The circuit court reasonably could have disbelieved TitleMax's counsel's claims the purported AAA letter addressing Abram's arbitration proceeding was diverted by a "spam" filter. The circuit court likewise could have rejected TitleMax's argument it did not receive notice of the other nine Plaintiffs' October 2019 AAA demands for arbitration as not credible given TitleMax's counsel was on notice as early as January 2019, that Plaintiffs and 790 other consumers represented by Plaintiffs' counsel provided TitleMax's legal department notice of their intent to file individual arbitration demands with the AAA.

TitleMax also failed to provide confirmation from the AAA it cured the registration issue, which the AAA stated was a prerequisite to resuming administering arbitration for TitleMax's consumers in the AAA Letter. TitleMax acknowledged at oral argument the AAA confirmation stating TitleMax cured the registration issue is not in the record. Instead, TitleMax urges this Court to take judicial notice of the AAA's registry as a public record to support its assertion it cured the registration issue. Plaintiffs disputed whether TitleMax cured the registration issue below. At oral argument, Plaintiffs' counsel stated it was inappropriate for this Court to search the AAA's registry but said if this Court did so, it would reveal TitleMax has registered nothing to date. This Court declines TitleMax's and Plaintiffs' invitation to take judicial notice of the AAA's registry and its contents to resolve this dispute. Neither party cites to authority the AAA's

22

registry, publicly available only after an individual registers to gain access, contains public records upon which this Court can take judicial notice. Nor would it be proper for this Court to venture outside of the record to consider this matter, given TitleMax's concession the AAA confirmation was not part of the record below. *In re J.M.*, 328 S.W.3d at 469. This Court rejects TitleMax's unpreserved and unsupported challenges to the validity of the AAA Letter to the extent the AAA purportedly violated its rules.

*The AAA Letter as Applied to The Other Nine Plaintiffs*

This Court now turns to explain how the AAA Letter authorizing Plaintiffs to file their disputes in the circuit court is a reasonable theory supported by the pleadings and evidence to affirm the circuit court's judgment overruling TitleMax's motion to compel arbitration regarding *all* Plaintiffs. We begin our analysis by addressing the other nine Plaintiffs' right to file their claims in court. The AAA Letter indicates the other nine Plaintiffs to this appeal filed a demand for arbitration. The AAA Letter states the arbitration clause provides for arbitration by the AAA. The AAA determined TitleMax "failed to comply with the AAA's policies regarding consumer claims" and cited its Consumer Due Process Protocol, its Consumer Arbitration Rules, and the Costs of Arbitration. As a consequence, the AAA stated it "must decline to administer *this claim and any other claims between TitleMax . . . and its consumers at this time*." Emphasis added. The AAA Letter cited AAA Rule R-1(d), which states:

> The AAA administers consumer disputes that meet the due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules*. The AAA will accept cases after the AAA reviews the parties' arbitration agreement and if the AAA determines the agreement substantially and materially complies with the due process standards of these Rules and the *Consumer Due Process Protocol*. Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

23

Accordingly, the AAA Letter informed the other nine Plaintiffs they could submit their disputes to the circuit court for resolution, to which they responded by suing within two days of receiving the AAA Letter. To the extent TitleMax argues the other nine Plaintiffs engaged in collective arbitration as evidenced by the AAA listing them under a single case number in violation of the arbitration agreements' requirement they engage in individual arbitration, this Court rejects this proposition. As with TitleMax's other unpreserved claims regarding the purported lack of notice and curing the registration issue, TitleMax failed to raise this claim as a point of error on appeal, and therefore, this Court may not review it. *Hawley*, 453 S.W.3d at 842 n.6. Further, this Court notes the October 2019 AAA demand for the other nine Plaintiffs indicated they were filing the claims "individually." This Court will not convict the circuit court of error based on the AAA's administrative procedure in assigning case numbers absent any evidence developed in the record or preserved arguments challenging such procedure below or on appeal. *Holmes v. Union Pac. R.R. Co.*, 617 S.W.3d 853, 859 (Mo. banc 2021).

The circuit court reasonably could have found the AAA Letter constituted sufficient grounds upon which to overrule TitleMax's motion to compel arbitration regarding the other nine Plaintiffs referenced in the AAA Letter because AAA Rule R-1(d) permitted them to file their claims in court after the AAA declined to administer their claims.

*The AAA Letter as Applied to Abram*

This Court likewise finds the AAA Letter constituted sufficient grounds upon which to overrule TitleMax's motion to compel arbitration regarding Abram. This Court recognizes the only record before us regarding Abram's purported arbitration attempt is an obscure reference in the 2020 affidavit and the Supplemental December 2019 Letters TitleMax included with its supplemental filing. This Court has determined the record does not support a finding the circuit

24

court authorized the supplemental filing, and therefore, did not have to consider those filings or exhibits. Further, this Court has determined even if the supplemental filing was appropriate, the circuit court was free to disbelieve the Supplemental December 2019 Letters and the 2020 affidavit which contain self-serving statements unsupported by the record. Yet, the lack of a record under these circumstances does not foreclose Abram from pursuing her claims in court.

When explaining its declination to administer the filed arbitration, the AAA Letter stated, "we must decline to administer *this claim and any other claims between TitleMax . . . and its consumers at this time*." Emphasis added. Using the term "consumers" in this context, rather than "claimant," is a distinction with a difference. The AAA Letter referred to the other nine Plaintiffs as "Claimant" or "filing party" throughout the correspondence, but used the word, "consumers," when addressing the breadth of its declination to administer TitleMax arbitrations going forward. The AAA Letter used the phrase, "at this time," to delineate the time period to mean those consumers who had a claim when the AAA declined to administer further arbitrations and before TitleMax cured the registration issue. Use of the phrase, "this claim and any other claims," likewise supports the AAA Letter's intent to reach beyond the other nine Plaintiffs because "this claim" refers to the other nine Plaintiffs' dispute while "any other claims between TitleMax . . . and its consumers" refers to additional disputes TitleMax may have with its consumers "at this time." The AAA Letter's usage of the plural to describe "any other claims" and "consumers" included Abram, who was a TitleMax "consumer" with a "claim" against TitleMax "at this time" when the AAA declined to administer the other nine Plaintiffs' arbitration claims. Abram, along with the other nine Plaintiffs, sued within two days of receiving the AAA Letter and before there was any evidence presented TitleMax cured the registration issue, which was the AAA's prerequisite to resuming arbitration administration for TitleMax's consumers.

25

The dissenting opinion's position Abram was not a "party" to the demand or the AAA's declination of the demand does not mean the AAA Letter does not apply to her claim. To adopt the dissenting opinion's analysis would force each plaintiff into an exercise in futility by filing and paying for individual arbitration when the AAA Letter clearly stated it would not administer "any other claims between TitleMax . . . and its consumers at this time" until TitleMax rectified the registration issue. Therefore, the circuit court reasonably could have found the AAA Letter authorized Abram—as a TitleMax consumer with a claim when the AAA declined to arbitrate any claims between TitleMax and its consumers due to unresolved registration issues—to file her claims in the circuit court.[22]

Because the record before this Court supports the finding the circuit court could have relied upon the AAA Letter citing AAA Rule R-1(d) to support its decision, this Court need not address TitleMax's remaining arguments, including Point II.[23] The circuit court did not err in overruling TitleMax's motion to compel arbitration regarding Plaintiffs. Points I and II are denied.

---

[22] The dissenting opinion mischaracterizes this Court's opinion as authorizing the remaining more than 700 consumers represented by Plaintiffs' counsel to file their claims in the circuit court under our analysis of the AAA Letter. This Court offers no opinion with respect to the AAA Letter's application to the 700-plus consumers represented by Plaintiffs' counsel who did not file suit in November 2019. The AAA Letter states it would consider accepting consumer disputes going forward once TitleMax completed the registration process and received confirmation from the AAA the registration was active. Because we do not know whether or when TitleMax cured the registration issue, we cannot speak to those consumers' legal obligations when they declined to file suit after the AAA Letter was issued. To state otherwise would be to issue an impermissible advisory opinion which this Court cannot do because those consumers are not parties to these ten appeals. *Cope v. Parson*, 570 S.W.3d 579, 586 (Mo. banc 2019) (quoting *State ex rel. Heart of Am. Council v. McKenzie*, 484 S.W.3d 320, 324 n.3 (Mo. banc 2016)) ("An opinion is advisory if there is no justiciable controversy, such as if the question affects the rights of persons who are not parties in the case . . . .").

[23] In Point II, TitleMax acknowledged "*several* Plaintiffs' agreements contain delegation clauses," thus conceding not *all* Plaintiffs are bound by delegation clauses. Emphasis added. To reverse the circuit court's judgment as the dissenting opinion suggests would compel all Plaintiffs to proceed to arbitration. One of the many challenges Plaintiffs raised to oppose arbitration was contesting the validity of the arbitration agreements. We cannot see how this Court can order all Plaintiffs to proceed to arbitration when only the April 2007, February 2010, and June 2010 arbitration agreements contain delegation clauses requiring the parties to submit disputes about the validity of the arbitration agreement to the arbitrator. In contrast, the November 2015, January 2016, September 2017, and March 2019 arbitration agreements expressly state "the court and not the [arbitrator]" will decide disputes about the validity, coverage, or scope of the arbitration agreements. Without a delegation clause, courts decide the gatekeeping issue of the validity of an arbitration agreement. *Bridgecrest Acceptance Corp. v. Donaldson*, 648 S.W.3d 745, 750 n.3 (Mo. banc 2022). The record properly before this Court does not permit us to determine which Plaintiffs signed the

**Conclusion**

The circuit court's judgment is affirmed.

_____
Philip M. Hess, Judge

Robert M. Clayton III, P.J. concurs and
Cristian M. Stevens, J. dissents in a separate opinion.

---

contracts with a delegation clause and which did not. Ordering *all* Plaintiffs to proceed directly to arbitration would violate both *Bridgecrest* and the contract rights of the Plaintiffs who signed a TitleMax-drafted contract without a delegation clause because an unknown number of Plaintiffs *must* go to court *before* going to arbitration, if appropriate.



# In the Missouri Court of Appeals
# Eastern District

DIVISION ONE

| | | |
|---|---|---|
| KIMBERLY ABRAM et al., | ) | No. ED110631 |
| | ) | |
| Respondents, | ) | Appeal from the Circuit Court |
| | ) | of Jefferson County |
| v. | ) | Cause No. 19JE-CC00803 |
| | ) | |
| TITLEMAX OF MISSOURI, INC., | ) | Honorable Troy A. Cardona |
| | ) | |
| Appellant. | ) | Filed: November 21, 2023 |

I respectfully dissent from the majority opinion affirming the judgment of the trial court. The majority opinion construes the AAA Letter, which declined the arbitration demand of only nine of the ten Plaintiffs in one appeal before us, to authorize at least all 100 Plaintiffs in all ten of the appeals before us to file their claims in the circuit court. Properly construed, the AAA Letter does not support the majority's construction and is not the "reasonable theory" to affirm the circuit court's judgment the majority opinion says it is.

The majority opinion does a fine job of cutting through the deficiencies in the record and the distractions raised by the parties, but the record as properly honed by the majority opinion does not support its holding. Among Plaintiffs' arguments on appeal is "the circuit court's judgment should be affirmed because the AAA rules authorized Plaintiffs to submit their disputes to the circuit court after the AAA declined to administer Plaintiffs' arbitration as stated

in the AAA Letter." Principal Slip Op. 14. The majority opinion holds "AAA Consumer Rule R-1(d) authorized Plaintiffs to submit their disputes to the circuit court," and the AAA Letter is "[a] reasonable theory supported by the pleadings and evidence properly before the circuit court and this Court to affirm the circuit court's judgment overruling TitleMax's motion to compel arbitration regarding *all* Plaintiffs . . .." Principal Slip Op. 2, 16 (emphasis in original); *see also* Principal Slip Op. 23 ("This Court now turns to explain how the AAA Letter authorizing Plaintiffs to file their disputes in the circuit court is a reasonable theory supported by the pleadings and evidence to affirm the circuit court's judgment overruling TitleMax's motion to compel arbitration regarding *all* Plaintiffs." (emphasis in original)). That holding is not a reasonable interpretation of the AAA Letter.

The case is made more difficult by the circuit court's summary denial of the motion to compel arbitration in all ten lawsuits, as to all 100 Plaintiffs, without elaboration, other than that denying the motion to compel arbitration, unlike granting it, allowed a stay of the proceedings before the circuit court and an immediate appeal to this Court. As the majority opinion points out, this difficulty is compounded by TitleMax's failure to request findings of fact or a statement of the grounds for the circuit court's decision under Rule 73.01(c). Thus, we are left to review for, as the majority opinion puts it, "any reasonable theory within the pleadings that is supported by the evidence" to justify the circuit court's judgment. Principal Slip Op. 16 (quoting *Bolt v. Giordano*, 310 S.W.3d 237, 242 (Mo. App. E.D. 2010)). In my opinion, the AAA Letter, on its face, is not a reasonable theory to affirm the circuit court's judgment, and there is no other.

The sentence in the AAA Letter on which the majority opinion builds its holding is: "Accordingly, we must decline to administer this claim and any other claims between TitleMax . . . and its consumers at this time." The majority opinion emphasizes the sentence's one-time use of the word "consumers," as opposed to "claimant," as used two times elsewhere in the AAA Letter. The majority opinion takes this to mean that the AAA Letter must apply to a broader population than the nine Plaintiffs who demanded arbitration from AAA and to whom the letter is addressed. But, in context, that does not appear to be the meaning of the AAA Letter's reference to "consumers."

The AAA Letter states, in pertinent part:

Prior to the filing of this arbitration, TitleMax of Missouri, Inc. failed to comply with the AAA's policies regarding *consumer* claims. Accordingly, we must decline to administer this claim and any other claims between TitleMax . . . and its *consumers* at this time. These policies can be found on our web site . . . in the *Consumer* Due Process Protocol ("Protocol") and the *Consumer* Arbitration Rules ("*Consumer* Rules"), including the Costs of the Arbitration.

Accordingly, we have administratively closed our file and will refund any payment received by the filing party. According to R-1(d) of the *Consumer* Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution. (emphasis added).

The sentence referring to "consumers," on which the majority opinion relies, is ensconced in paragraphs repeatedly referencing AAA's policies regarding "consumer claims," the "Consumer Due Process Protocol," "the Consumer Arbitration Rules," and "Rule R-1(d) of the Consumer Rules." AAA Consumer Rule R-1(d) is, as the name suggests, part of the AAA *Consumer* Arbitration Rules, as opposed to the AAA Commercial Arbitration Rules or the AAA Employment Arbitration Rules. In context, the single reference to "consumers" on which the majority's holding turns seems to be simply an indicator that AAA's policies regarding *consumer* claims, the *Consumer* Due Process Protocol, the *Consumer* Arbitration Rules, and

3

AAA *Consumer* Rule R-1(d) apply to the nine Plaintiffs addressed in the letter, who are "consumers."[1] Had this been, for example, an employment case and had the AAA Employment Arbitration Rules applied, a reference in the AAA Letter to "employees" would not be surprising. It certainly would not mean that all employees, whether or not they demanded arbitration from AAA and were addressed in the declination letter, could file their claims in the circuit court.

The majority opinion also interprets the phrase "at this time" at the end of the same sentence to mean the AAA Letter declined to arbitrate Abram's claims and the claims of any and all other consumers with a claim "at this time." Principal Slip Op. 25; Companion Slip Ops. 7. As an initial matter, the more natural reading would seem to be that AAA "must decline . . . at this time," not that any and all consumers with a claim "at this time" may file their claims in the circuit court. Notably, the majority opinion does not define what it means to be a "consumer with a claim . . . at this time," but hints that it "refers to additional disputes TitleMax may have with its consumers 'at this time,'" which could mean just about anybody. Principal Slip Op. 25. The majority opinion concludes, "Therefore, the circuit court reasonably could have found the AAA Letter authorized Abram—as a TitleMax consumer with a claim when the AAA declined to arbitrate any claims between TitleMax and its consumers due to unresolved registration issues— to file her claims in the circuit court." Principal Slip. Op. 26.

But that is not all. The majority opinion holds "at this time" means the circuit court reasonably concluded that the AAA Letter authorized all 100 Plaintiffs, including the 91 who never demanded arbitration from AAA, to file their claims in the circuit court. Companion Slip

---

[1] The AAA Letter also refers to the "filing party," "either party," and "all parties," instead of "claimant," suggesting the letter's similar reference to "consumers," instead of "claimant," does not bear the significance afforded it by the majority opinion.

Ops. 7. Based on that interpretation, there is no reason to stop at the 100 Plaintiffs represented in these cases. The majority's interpretation of the AAA Letter may just as well authorize the 834 or 803 plaintiffs listed with Plaintiff's counsel's demand letter to file their claims in the circuit court. The majority opinion both vehemently denies this and steadfastly refuses to say. *See* Principal Slip Op. 26 n.22 ("The dissenting opinion mischaracterizes this Court's opinion as authorizing the remaining more than 700 consumers represented by Plaintiffs' counsel to file their claims in the circuit court under our analysis of the AAA Letter. This Court offers no opinion with respect to the AAA Letter's application to the 700-plus consumers represented by Plaintiffs' counsel who did not file suit in November 2019.").[2] For that matter, it is hard to see how the majority's interpretation of the AAA Letter does not authorize all of TitleMax's consumers literally "with a claim . . . at this time," whatever that may mean, to file their claims in the circuit court. That is because the text of the AAA Letter does not support the majority's interpretation, and that interpretation is unreasonable.

Even if, in isolation, a reasonable interpretation of the sentence on which the majority opinion relies were that AAA declined to arbitrate the claims of more than the nine Plaintiffs who demanded arbitration, the AAA Letter does not authorize all 100 Plaintiffs to file their claims in the circuit court. The AAA Letter goes on to cite AAA Consumer Rule R-1(d), and the majority opinion holds "AAA Consumer Rule R-1(d) authorized Plaintiffs to submit their disputes to the circuit court after the AAA declined to administer their arbitrations." Principal Slip Op. 2. Indeed, as the AAA Consumer Arbitration Rules go, the majority opinion expressly

---

[2] The majority opinion steadfastly refuses to say whether a "consumer with a claim . . . at this time" means someone who, for example, filed suit, could have filed suit, was included in the demand letter, was represented by counsel, talked to counsel, thought he had a claim, or, as the majority hints, merely "may have" a claim. Even if the majority opinion committed to any of these definitions, there would be little basis in the text of the AAA Letter.

5

"confines its analysis to . . . AAA Rule R-1(d)," which it characterizes, rightly or wrongly, as "the only AAA Rule cited in the AAA Letter." Principal Slip Op. 16. But the plain language of AAA Consumer Rule R-1(d) is directly contrary to the majority's holding that the AAA Letter is the reasonable theory authorizing all 100 Plaintiffs to file their claims in the circuit court.

The AAA Letter states, "According to R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution." As if to dispel any doubt, the majority opinion itself cites AAA Consumer Rule R-1(d) for the same proposition: "Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution." Principal Slip Op. 23. This is the one sentence in both the AAA Letter and the AAA Consumer Arbitration Rules specifying who gets to file a claim in the circuit court, which is the crux of this case. The answer, very clearly, is "either party" to the demand for arbitration from AAA and the declination of that demand pursuant to the AAA Letter. For that reason, the AAA Letter concludes that, upon confirming resolution of its registration issue, TitleMax is responsible for informing all "parties," not all "consumers with a claim."

The problem is 91 of the 100 Plaintiffs were not "either party" to the arbitration demand or the AAA Letter. The majority opinion concedes as much. Principal Slip Op. 2 ("Here, nine of the named Plaintiffs, save Abram, availed themselves of the arbitration process . . ..."); Companion Slip Ops. 6 ("Here, there is no record these Plaintiffs filed any demand with the AAA before the AAA Letter was issued."). AAA Consumer Rule R-1(d) therefore does not allow Abram or any of the 90 other Plaintiffs, who were not parties to the demand for arbitration from AAA or the AAA Letter declining the demand, to file their claims in the circuit court.

6

Rather than offering a contrary interpretation of AAA Consumer Rule R-1(d), the majority's response is that requiring the 91 Plaintiffs to be parties to an arbitration as required by the rule "would force each plaintiff into an exercise in futility by filing and paying for individual arbitration . . .." Principal Slip Op. 26. This, despite that the majority cannot say what the result of that arbitration demand would be today, Principal Slip Op. 22-23, 26 n.22, and the AAA Letter makes clear "we will refund any payment received by the filing party." Futile or not, I would call it complying with the plain language of the AAA Letter and AAA Consumer Rule R-1(d).

Finally, even assuming the majority's interpretation of the AAA Letter were reasonable, I do not see how the AAA Letter addressed to only the nine Plaintiffs who demanded arbitration from AAA could be legally binding as to the other 91 Plaintiffs who were not parties to the arbitration demand, based on the terms of the arbitration agreement and as a matter of law. *See generally* 9 U.S.C. §4 ("The court shall hear the *parties*, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the *parties* to proceed to arbitration in accordance with the terms of the agreement." (emphasis added)); *see also* RSMo §435.012.1 ("In order to insure that all *parties* to an arbitration proceeding are aware of their rights under [the Uniform Arbitration Act], the notification served upon the *parties* by the arbitrator . . . shall contain . . . a statement advising the *parties* of their rights under [the Uniform Arbitration Act] . . . ." (emphasis added)).

I respectfully dissent. I would reverse the circuit court's judgment authorizing all 100 Plaintiffs, including the 91 Plaintiffs (Abram here, and the ten Plaintiffs in each of the other nine

appeals before us) who were not parties to the demand for arbitration from AAA or the declination of the arbitration in the AAA Letter, to file their claims in the circuit court.[3]

<br>

_[signature]_
_____
Cristian M. Stevens, Judge

---

[3] The majority opinion suggests my position is that all Plaintiffs are prohibited from filing their claims in the circuit court. Principal Slip Op. 26 n.23. That is not my position. It is the majority opinion that would "affirm the circuit court's judgment overruling TitleMax's motion to compel arbitration regarding *all* Plaintiffs," Principal Slip Op. 23, while conceding not all Plaintiffs are entitled to file their claims in the circuit court, Principal Slip Op. 26 n.23. My position simply is the AAA Letter, the only theory identified by the majority opinion, is not a reasonable theory to affirm the judgment authorizing all 100 Plaintiffs to file their claims in the circuit court.